Aloysius Steindl and Hazel Steindl, Appellees, v. The New York Central Railroad Company, Appellant.

Gen. No. 39,999.

Opinion filed June 21, 1938.

SIDNEY C. MURRAY and JOHN B. KNEIPPLE, both of Chicago, for appellant.

EDWARD D. LAPPERRE, of Chicago, for appellees.

Mr. Presiding Justice Friend delivered the opinion of the court.

Aloysius and Hazel Steindl, plaintiffs, brought suit against the New York Central Railroad Company, defendant, for damages occasioned by defendant's failure to deliver two pieces of baggage, transported from Chicago to Miami, Florida, in time to enable plaintiffs to fulfill a West Indies cruise. The cause was tried by the court without a jury, resulting in the assessment of damages against defendant in the sum of $186.40, from which judgment defendant appeals.

The principal facts, with the exception of those pertaining to the question of damages, are shown by a written stipulation entered into between the parties, as follows:

"1. That the defendant, Cleveland, Cincinnati, Chicago and St. Louis Railway Company, having no interest in the above matter, may be dismissed without costs.

"2. That the defendant, New York Central Railroad Company, is a corporation incorporated under the laws of the State of Illinois and is empowered by its charter to operate as a common carrier of passengers and baggage for hire from and to various points in the United States, including the City of Chicago, State of Illinois, and that the said defendant was operating as such common carrier at all times hereinafter stated.

"3. That on or about December 11, 1936, the plaintiff, Aloysius Steindl, reserved passenger accommodations with a duly authorized agent of the defendant in the City of Chicago, County of Cook and State of Illinois for transportation of himself and his wife, Hazel Steindl, also plaintiff herein, from Chicago, Illinois, to Miami, Florida, via the lines of the defendant and its

connecting carriers for March 11, 1937; that on said date, or prior thereto, plaintiff, Aloysius Steindl, had made reservations for himself and his wife on a certain vessel scheduled to leave Miami, Florida, at 3:30 P. M., on March 13, 1937, and he so informed defendant's agent.

"4. That on March 11, 1937, plaintiff, Aloysius Steindl, called upon defendant at Chicago, Illinois, and thereupon paid defendant the legally published tariff charge for transportation for himself and his wife and their baggage from Chicago, Illinois, to Miami, Florida. The defendant issued plaintiff certain tickets or contracts of carriage in the usual form and in accordance with the terms thereof agreed to transport plaintiffs and their baggage from Chicago, Illinois, to Miami, Florida, via the lines of defendant and those of its connecting carriers.

"5. That on March 11, 1937, plaintiffs checked with and turned over to defendants at Chicago, Illinois, certain baggage consisting of two pieces of hand luggage and at the same time exhibited to defendant their passenger tickets or contracts of carriage and instructed the defendant to transport said baggage to Miami, Florida, in accordance with the contracts of carriage.

"6. That at said time plaintiff advised defendant that he and his wife had procured reservations on a steamship leaving Miami, Florida, on March 13, 1937, at 3:30 P. M. and that it would be necessary that said baggage be shipped on the same train with the plaintiffs in order that proper connections be made with said steamship; that plaintiffs' transportation was routed via Hampton, Florida, and that thereupon when checking plaintiffs' baggage, defendant's agent marked plaintiffs' baggage 'Via Hampton' and issued a baggage check or receipt to plaintiffs.

"7. That on said date of March 11, 1937, at approximately 11:45 P. M., plaintiffs left Chicago, Illinois, on a train then operated by the defendant and destined to Miami, Florida, via Hampton, Florida, and that plaintiffs' baggage that had been checked as aforesaid was placed on the same train on which plaintiffs were then passengers and that on arrival of said train at Cincinnati, Ohio, baggage car containing the plaintiffs' baggage was switched from said train to another train, without plaintiffs' baggage being removed therefrom, which train traveled over another route and via Jacksonville, Florida, and which did not arrive in Miami, Florida, until approximately 7:30 P. M. on the night of March 13, 1937, and that by reason of this fact the plaintiffs were without their baggage at the time their steamship was scheduled to sail and that they therefore canceled their reservations on said steamship which departed from Miami, Florida, at 3:30 P. M. on March 13, 1937.

"8. That at all times hereinafter mentioned, the defendant was a party to a certain tariff known as Baggage Tariff BG No. 7, which was legally on file with the Interstate Commerce Commission and it stipulated that defendant may introduce into evidence a certified copy of said tariff, together with the effective supplements thereto which were in effect during the month of March, 1937, without further proof.

"9. It is further stipulated and expressly understood that the plaintiffs herein reserve the right to introduce such testimony as they may deem advisable concerning damages which they may have sustained if any and either of the parties hereto may further introduce such testimony as may be necessary to the trial of the issues herein which is not in conflict with the facts stipulated hereto."

In addition to the stipulated facts, Aloysius Steindl testified that prior to leaving defendant's station on March 11, 1937, he had a conversation with Robert Ward, defendant's baggage agent; that he told Ward of his contemplated cruise from Miami, Florida, and wanted the baggage to arrive in Miami on the same train, and was advised that it would be so transported; that upon their arrival in Miami on March 13th the baggage was not there, and after locating it, but too late to make connections on the proposed cruise, the steamship reservations to the West Indies were canceled. Steindl also testified to the following items of damage claimed by him: Expense in locating the baggage—$10 or $15; round trip rate and Pullman rate from Chicago to Miami—$136.40; four days' hotel expenses in Miami—$24; meals on the train—$16.

On behalf of defendant, Robert Ward testified that he was employed in the baggage department in defendant's station in Chicago; that he often received requests to forward baggage on a particular train, but was not permitted to testify as to the practice of the railroads regarding such requests.

As ground for reversal it is first urged that since defendant's lawfully published tariff, on file with the Interstate Commerce Commission governing the transportation of baggage, expressly reserves to the carrier the right to forward baggage on a following or preceding train, it was impossible for defendant to waive its right thereunder. At the outset it must be conceded that the rights and liabilities of the parties herein depend entirely upon the provisions of the Interstate Commerce Act and the provisions of defendant's tariffs. Defendant was an interstate carrier, and the transportation of plaintiffs and their baggage was interstate. Under the circumstances, the decisions of the Supreme Court of the United States

are controlling. (*Hartford Live Stock Ins. Co. v. Railway Express Agency, Inc.*, 274 Ill. App. 585.)

Defendant's tariff contained the following rule: "Rule 2. Delivery of baggage or property for checking and forwarding. (a) Baggage or property to be transported, when checked at station or steamship wharf must be presented with ticket to baggage agent sufficiently in advance of departure of the train or boat to permit agent to record, weigh, measure and to issue the necessary checks; otherwise, it will be forwarded on first convenient train or boat, subject to the usual free allowance, and also subject to collection at destination of any accrued tariff or other charges. *The carriers reserve the right to forward it upon a preceding or following train or boat or via another route over which ticket held by passenger may be valid.*" (Italics ours.)

Plaintiffs' right of action is dependent upon the provisions of the Interstate Commerce Act (U. S. C. A. Title 49, 1937, Cumulative Annual Pocket Part, sec. 20, par. 11) and the so-called Elkins Act (U. S. C. A. Title 49, sec. 6, par. 7). The Elkins Act expressly forbids any special advantage, and the federal courts have consistently held that the principal purpose of the Commerce Act was to compel the establishment of reasonable rates and their uniform application. "That purpose would be defeated if sanction be given to a special contract by which any such advantage is given to a particular shipper. . . . To guarantee a particular connection and transportation by a particular train, was to give advantage or preference not open to all and not provided for in the published tariffs." (*Chicago & Alton R. Co. v. Kirby*, 225 U. S. 155, 166.) The Supreme Court of the United States has broadly interpreted the Elkins Act as intending to require that all shippers be treated alike, and to pro-

hibit any and all means that might be resorted to to obtain or receive concessions from rates duly posted and published. (*Armour Packing Co. v. United States,* 209 U. S. 56.)

In *Atchison, T. & S. F. Ry. Co. v. Robinson,* 233 U. S. 173, the shipper sued to recover the value of a race horse. The evidence disclosed that he had made an oral arrangement with the agent to have the horse shipped on a certain train. Nothing was said about value, but the plaintiff signed a written contract limiting the value to $100, as provided by tariff. The court said, "To give to the oral agreement upon which the suit was brought, the prevailing effect allowed in this case by the charge in the trial court, . . . would be to allow a special contract to have binding force and effect though made in violation of the filed schedules which were to be equally observed by the shipper and carrier. If oral agreements of this character can be sustained, then the door is open to all manner of special contracts, departing from the schedules and rates filed with the Commission. . . . *To maintain the supremacy of such oral agreements would defeat the primary purposes of the interstate commerce act, so often affirmed in the decisions of this court, which are to require equal treatment of all shippers and the charging of but one rate to all, and that the one filed as required by the act.*" (Italics ours.)

In *Davis v. Henderson,* 266 U. S. 92, the carrier's tariffs provided that orders for cars must be placed in writing with the local agent. In an action against the carrier for failure to furnish cars within a reasonable time after notice, plaintiff was permitted to testify that written notice had been waived. In reversing the judgment of the lower court Mr. Justice Brandeis, speaking on behalf of the court, said:

"There is no claim that the rule requiring written notice was void. The contention is that the rule was waived. It could not be. The transportation service to be performed was that of common carrier under published tariffs. The rule was a part of the tariff. *Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.*, 241 U. S. 190, 197; *Missouri, Kansas & Texas Ry. Co. v. Ward*, 244 U. S. 383, 388; *Davis v. Cornwell*, 264 U. S. 560, 562.''

In *Davis v. Cornwell*, 264 U. S. 560, an action was brought against the carrier for failure to supply cars. The evidence indicated that defendant's agent had promised to furnish cars on a certain day. The tariffs did not provide for such a contract. In holding the contract not binding, the court said: ''The obligation of the common carrier implied in the tariff is to use diligence to provide, upon reasonable notice, cars for loading at the time desired. A contract to furnish cars on a day certain imposes a greater obligation than that implied in the tariff. For, under the contract, proof of due diligence would not excuse failure to perform.''

Under these and various other decisions, cited in defendant's brief, some of which deal with rates not specified in the published tariffs of the carrier and others with special agreements not specified in the tariffs, the federal courts have consistently held that where the tariffs impose no obligation on the participating carriers, such obligation could not be established by parol agreement. In the case at bar plaintiffs rely entirely upon an oral understanding with Ward, the baggage man, to ship the two pieces of luggage on the same train. Under the decisions this agreement was not binding upon the carrier. There is nothing in the record to show that the baggage was

unreasonably delayed, and under the provisions of the tariff the carrier had the right to ship the baggage on the following train, which it did. The leading case of *Chicago & Alton R. Co. v. Kirby, supra,* appears to be controlling of the issues here involved. It is fairly impossible to reconcile the decision of the trial court in the case at bar with that of the *Kirby* case, for if the plaintiffs here had the right to rely on the assurance of defendant's agent that their baggage would be forwarded and would arrive on a particular train, despite the fact the tariff reserved in defendant the right to forward it on a following or preceding train, then certainly Kirby had the right to rely on the carrier's guaranty that his horse would be transported on a particular train, despite the fact that the tariff contained no such provision.

In view of our conclusion on the question of liability, it becomes unnecessary to discuss the remaining point relating to damages. We are of the opinion that the municipal court erred in assessing damages and entering the judgment in favor of plaintiffs, and therefore the judgment is reversed.

*Judgment reversed.*

Scanlan and John J. Sullivan, JJ., concur.