**Bob C. COOPER and Jim B. Cooper, Appellants,**

**v.**

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellee.**

**No. 15109.**

United States Court of Appeals Eighth Circuit.

Dec. 29, 1954.

J. D. Robertson, Marshalltown (Arley J. Wilson, Marshalltown, Iowa, was with him on the brief), for appellants.

A. B. Howland, Des Moines, Iowa (Bennett A. Webster, Jr., Des Moines, Iowa, was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellants to recover damages to a shipment of six carloads of stocker cattle transported from Crystal City, Texas to Guthrie Center, Iowa. Recovery was sought because of the alleged violation of 45 U.S.C.A. § 71, referred to in briefs of counsel as the Cruelty to Animals Act and commonly known as the 36 hour law. It was alleged in the complaint that the cattle had been confined during transportation by the defendant for a period of more than 36 hours without rest, water and feeding in violation of 45 U.S.C.A. § 71. Many of the facts were stipulated and hence stand without dispute.

Plaintiffs are partners and at all times material to the issues here involved were engaged in the business of farming and feeding cattle. On April 27, 1951, they delivered to the Missouri Pacific Railroad Company at Crystal City, Texas, 197 head of stocker cattle for transportation to Guthrie Center, Iowa. They were received by the Missouri Pacific Railroad Company as the initial carrier pursuant to the Uniform Live Stock Contract and were transported in six live stock cars. The cattle were transported by the initial carrier to Prospect, Missouri, where after they had been unloaded for rest, water and feeding they were reloaded and transported to Kansas City, Missouri, where they were delivered to defendant for transportation to Guthrie Center, Iowa. No question is raised as to the proper handling of the shipment by the initial carrier. The cattle were reloaded at Prospect, Missouri, after proper rest, watering and feeding on May 1, 1951 at 11:00 o'clock A.M. They were transported from Kansas City, Missouri, by the defendant without any incident of which complaint is made to Des Moines, Iowa, where they arrived May 2, 1951 at 10:35 o'clock A.M. The defendant has a branch line from Des Moines, Iowa to Guthrie Center, Iowa over which at the time here in question it operated only a tri-weekly service. Normally, departure time for the train was 7:30 o'clock A.M., but because of the anticipated arrival of this shipment the departure time was postponed until the arrival of the cattle which occurred at 10:35 o'clock A.M. Following the arrival of the cattle the cars were by the usual switching proc-

esses transferred to and embodied in the tri-weekly local train bound ultimately for Guthrie Center, Iowa, and departed from Des Moines, Iowa, at 12:30 o'clock P.M. Notwithstanding the fact that the cattle were transported pursuant to the terms of the Uniform Live Stock Contract plaintiffs because of the condition of the stockyards at Guthrie Center, Iowa, requested that delivery be made at a crossing one and one-half miles south from Guthrie Center and local officials had agreed to comply with this request. Plaintiffs, anticipating that the cattle would be delivered at this crossing, were at the crossing with unloading chutes, horses and men, arriving there by noon on May 2, 1951. As has been observed the train transporting the cattle did not depart from Des Moines until 12:30 P.M. and as it was a tri-weekly local its crew did considerable work at the stations intervening so that it did not arrive at Guthrie Center until 7:45 P.M. During the time following the departure of the shipment from Des Moines there were a number of telephone conversations between one of the plaintiffs and local officials of the defendant company relative to the probable time of arrival of the cattle. When the train approached the crossing enroute to Guthrie Center one of the plaintiffs signaled those in charge of the train to proceed on to Guthrie Center and this was done so that the train ultimately arrived in Guthrie Center at 7:45 P.M. Some controversy then arose between the plaintiffs and the local representatives of the railroad company with reference to accepting delivery of the cattle. The plaintiffs complained that by reason of the lateness of the hour of arrival they were not in a position to unload the cattle. Representatives of the railroad company insisted that the cattle must be unloaded and that if the plaintiffs would not accept the delivery the company would return the cattle either to Stuart or Des Moines and there unload them for rest, water and feeding as it could not permit the cattle to remain in the cars beyond the 36 hour period. The plaintiffs then said they would not re-ceive or accept the cattle if they were so returned but in effect said they would receive the cattle at Guthrie Center and unload them the following morning. The train was held for two hours awaiting the determination of this controversy. The cars were switched onto a side track and the following morning were unloaded by the plaintiffs. Further details of the evidence will be developed in the course of this opinion. At the close of all of the evidence on motion of the defendant the court directed a verdict for defendant and from the judgment entered thereon this appeal is prosecuted.

It is the contention of the plaintiffs that a jury question was presented by the evidence as to whether or not the cattle had been delivered to the shipper within 36 hours from the time they had been previously unloaded for rest, water and feeding.

 There was testimony relative to telephone conversations between one of the plaintiffs and local representatives of the defendant to the effect that the plaintiffs were to receive the cattle at a crossing about one and one-half miles south of Guthrie Center and there were also conversations with reference to the time of the expected arrival of the train. The cattle were shipped pursuant to the terms of the Uniform Live Stock Contract. We must look to the terms of this contract as fixing the liability and duties of the respective parties. The parties were not at liberty to enter into any special contract or agreement because under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., uniformity of treatment of all shippers is required and no preference nor discrimination may be allowed. Chicago & A. R. Co. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033; Atchison, T. & S. F. R. Co. v. Robinson, 233 U.S. 173, 34 S.Ct. 556, 58 L.Ed. 901; Pine Bros. v. Chicago, B. & Q. R. Co., 153 Iowa 1, 133 N.W. 128, 39 L.R.A.,N.S., 639; Stiendl v. New York Central R. Co., 296 Ill.App. 70, 15 N.E.2d 899. Under the contract the defendant was not required to make delivery within any specified time and it

was the duty of the plaintiffs to unload the cattle from the cars. The defendant was under the duty of making delivery so that the cattle might be unloaded within the 36 hour period and hence the sole question here is whether or not such delivery was made. The trial court in passing on defendant's motion for directed verdict among other things said:

"* * * taking it as true the plaintiffs' Bob Cooper's testimony that he had arrangements with the defendant, and accepting that he had a right to arrange to have the cattle unloaded at the crossing a mile and a half south of Guthrie Center, the evidence discloses without dispute that the defendant was at that crossing with the shipment before the expiration of the 36-hour period, but that the plaintiffs refused to accept the cattle there and told the engineer to go on to Guthrie Center. The evidence shows that the defendant then moved the cars into Guthrie Center and spotted the cars on a switch track and held its train and crew there for two hours to determine whether the plaintiffs would accept the cattle or the cattle should be returned to Des Moines or Stuart for feed, water and rest.

"The evidence is to the effect that the plaintiffs stated that they would refuse to accept the cattle if they were so returned. At the time the evidence shows the cattle were on the same siding where they were unloaded by the plaintiffs on the following morning. Plaintiffs now seek to recover from the defendant basing their demands directly on the violation of the statutes which are known as the Cruelty to Animals Act, and which Act was passed by the Congress not for the benefit of the shipper or the railroad, but it was passed for the benefit of the animals really, to prevent cruelty to animals. It was the main purpose underlying the passage of that legislation. There is no evidence of any

negligent operation on the part of the defendant that I can submit to this jury. I cannot say nor can a jury say that the defendant had not done all that could have been done under the circumstances that are shown by this record. * * *

"In view of the delivery of the shipment on the siding at Guthrie Center within the 36-hour period the question of acceptance by the plaintiffs arises. The Court must find from plaintiffs' own proof that plaintiffs declined to accept the delivery of the property at the place which they had originally designated; that they did accept the delivery ultimately at the place to which the cars had been spotted and from which they were unloaded, * * *."

This fairly presents the condition of the record. Plaintiffs' claim was bottomed solely on the alleged violation of the so-called 36 hour law by confining the cattle without unloading for rest, water and feeding for a continuous period of more than 36 hours. Not only were the cattle at the crossing well within the 36 hour period but they were on the side track at Guthrie Center three hours and fifteen minutes before the expiration of the 36 hour period. When the cattle reached Guthrie Center the duty of transportation by the defendant was complete. It was never anticipated that the cars should be spotted at the stockyards nor that the cattle should be unloaded at the stockyards but it was the duty of the plaintiffs to unload the cattle and if this was not done within the 36 hour period it was not because of any breach of duty on behalf of defendant but because of the failure of plaintiffs to perform their part of the contract, towit, to unload the cattle. There was, we think, no question of fact to be determined by the jury but under the undisputed evidence plaintiffs had no right of recovery and the court did not err in directing a verdict for defendant and the judgment appealed from is affirmed.