Charles PAULSON, d/b/a Chuck Paulson & Sons Construction, Plaintiff,

v.

GREYHOUND LINES, INC., Defendant.

Civ. No. 4–85–1309.

United States District Court, D. Minnesota, Fourth Division.

Feb. 21, 1986.

William Kirschner, Al Baker, Kirschner & Baker Legal Clinic, Fargo, N.D., for plaintiff.

Lynn G. Truesdell, Charles E. Lundberg, Bassford, Heckt, Lockhart & Mullin, P.A., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. The Court will grant defendant's motion.

### FACTS

Plaintiff in this action, Charles Paulson d/b/a Chuck Paulson and Sons Construction, is a construction contractor in northwestern Minnesota. The defendant is Greyhound Lines, Inc., a California corporation with its principal place of business in Phoenix, Arizona.

In May of 1983, plaintiff intended to submit a bid on a contract proposal to the Minnesota Department of Transportation (DOT). *See* Paulson aff. ¶ 3. DOT, located in St. Paul, would consider only those bids which it received in its office by 9:25 a.m. on May 20, 1983. *Id.* at ¶ 4. Early in the afternoon of May 19, 1983, Gary Paulson, an employee of plaintiff, twice contacted the Greyhound terminal in Fargo, North

Dakota.[1] Both times Paulson asked whether defendant could guarantee delivering a construction bid to St. Paul by 8:30 a.m. on May 20, 1983. An employee of defendant, who Paulson later identified as James Houseman, told Paulson that defendant could make the delivery prior to 8:30 a.m. *Id.* at ¶ 2, 5–12, 25.[2]

Paulson delivered the package containing the construction bid to the Fargo Greyhound terminal at approximately 4:15 p.m. on May 19, 1983. Paulson had written "URGENT: Deliver by 8:30 a.m. 5/20/83" on the outside of the package. *Id.* at ¶ 13–14, exh. 1. While at the terminal, Paulson reiterated that the package containing the construction bid must be delivered by 8:30 a.m., and Houseman assured Paulson that it would be delivered by that time. *Id.* at ¶ 17–18.

Defendant delivered the package to DOT at 11:30 a.m. on May 20, 1983. DOT refused to consider plaintiff's bid because it was two hours and five minutes late. *Id.* at ¶ 27–30, exh. 1. The bid which DOT accepted was higher than the bid plaintiff submitted. *Id.* at ¶ 31. Plaintiff claims that defendant's failure to deliver the package on time caused plaintiff to lose $67,000 in lost wages and profits which plaintiff would have earned on the DOT project.

Plaintiff commenced the present action in state district court (Clay County) on March 15, 1984. Defendant removed the action to federal court on April 2, 1984, and the case was assigned to Judge Devitt. Defendant moved for summary judgment arguing that under the federal law governing interstate carriers, a contract for delivery of the package by a specific time could not exist. Defendant argued in the alternative that federal law limited plaintiff's damages to the $100 set by the tariff. Judge Devitt denied the motion for summary judgment on January 24, 1985, reasoning that plaintiff could escape the $100 limit on liability if he could establish his allegations that defendant fraudulently in-

duced him to enter into the shipping contract. Judge Devitt added that if plaintiff failed to establish actual fraud in the inducement, plaintiff could not enforce a contract for delivery by a specific time.

At the settlement conference, the parties requested Judge Devitt to clarify his January 24, 1985 order denying summary judgment. The parties resubmitted briefs on the issue of whether defendant's alleged fraud vitiates the limits on defendant's liability. Judge Devitt adhered to his earlier conclusion that fraud did provide such an exception. *See* August 13, 1985 order. The case was tried to a jury from September 3–5, 1985 only on the issue of liability. On September 5, 1985 the jury returned a verdict in favor of plaintiff by answering yes to the one interrogatory submitted to them. Specifically, the jury found that defendant made a false representation to plaintiff guaranteeing delivery of the package by a certain time, that plaintiff reasonably relied on the representation, and that the reliance proximately caused injury to plaintiff. Defendant moved for judgment notwithstanding the verdict, or in the alternative a new trial. On September 17, 1985, Judge Devitt denied defendant's JNOV motion, but granted defendant's motion for a new trial, stating that he was "left with a definite and firm conviction that the jury erred." September 17, 1985 order, at 2. Judge Devitt also disqualified himself from any further proceedings in the case. Defendant now, for the third time, seeks summary judgment.

## DISCUSSION

### Summary Judgment

A defendant is not entitled to summary judgment unless the defendant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt and

---

1. The following narrative, of course, is based on plaintiff's version of the facts.

2. Houseman denies making such guarantees and further states that he received no such phone calls. *See* Houseman aff. ¶ 4–5.

unless the nonmoving party is not entitled to recover under any discernible circumstances. *E.g., Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *E.g., Hartford Accident & Indemnity Co. v. Stauffer Chemical Co.,* 741 F.2d 1142, 1144–45 (8th Cir.1984). The nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Salinas v. School District of Kansas City,* 751 F.2d 288, 289 (8th Cir.1984).

### Law of the Case

■ Plaintiff argues that this Court should deny defendant's motion because Judge Devitt's prior denials of summary judgment are the law of the case. "The doctrine of law of the case 'merely expresses the practice of courts generally to refuse to reopen what has been decided, [it is] not a limit to their power.'" *Erie Conduit Corp. v. Metropolitan Asphalt Paving Ass'n,* 560 F.Supp. 305, 307 (E.D.N.Y. 1983), *quoting Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.); *accord Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,* 761 F.2d 649, 657 (Fed.Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). The doctrine prevents repeated litigation of issues previously decided in a lawsuit. *Liddell v. State of Missouri,* 731 F.2d 1294, 1304 (8th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984). The United States Court of Appeals for the Eighth Circuit, for example, "will reconsider a previously decided issue only on a showing of clear error and manifest injustice[,]" *Liddell,* 731 F.2d at 1304, or if the evidence at a later trial is different from the evidence reviewed on the first appeal. *E.g., Austin v. Loftsgaarden,* 768 F.2d 949, 952 (8th Cir.), *cert. granted,* — U.S. —, 106 S.Ct. 379, 88 L.Ed.2d 333 (1985). Other courts of appeals add a change in controlling authority as another exception circumstance permitting reconsideration. *E.g., Kori Corp.,* 761 F.2d at 657.

■ The doctrine of law of the case has less force at the trial court level, where it is essentially a management practice to allow a logical progression toward a final resolution. *See* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[1], at 118 (1984). Under Eighth Circuit law, a trial judge's denial of a motion for judgment notwithstanding a verdict does not constitute law of the case precluding a subsequent judge from directing a verdict in a retrial. *Day v. Amax, Inc.,* 701 F.2d 1258, 1263 (8th Cir.1983).

■ One judge denying a summary judgment motion does not preclude a successor judge from granting it. *E.g., Dictograph Products Co. v. Sonotone Corp.,* 230 F.2d 131, 134–36 (2d Cir.) (L. Hand, J.), *cert. dismissed,* 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 794 (1981). A successor judge has the same discretion to reconsider a ruling as the first judge would. *Abshire v. Seacoast Products, Inc.,* 668 F.2d 832, 837–38 (5th Cir.1982); *but see Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 165 (3d Cir.1982) (a subsequent judge should give deference to previous rulings). A panel of the Eighth Circuit relied, in part, on *Hayman Cash Register Co.* in holding that a successor judge can overrule prior opinions in the same case only for good cause. *In re Exterior Siding & Aluminum Coil,* 696 F.2d 613, 616 (8th Cir. 1982). That panel decision, however, was negated by a divided en banc court. *In re Exterior Siding & Aluminum Coil,* 705 F.2d 980 (8th Cir.) (en banc) (per curiam), *cert. denied,* 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). The Court, therefore, is not constrained from granting defendant's motion for summary judgment if the

892

Court concludes that such action is appropriate.[3]

**Merits**

█ As an interstate carrier, defendant is governed by the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917 (hereafter Act). Any claim plaintiff has against defendant arising from the shipment of the package must be asserted under the Act since it preempts state law. *See, e.g., Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964); *Fulton v. Chicago, Rock Island & Pacific Railroad Co.*, 481 F.2d 326, 331–32 (8th Cir.), *cert. denied*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973).

█ Under the Act, defendant can charge rates and supply services only in accordance with published tariffs. 49 U.S.C. § 10761.[4] The tariff governing defendant provides that

Carriers do not agree to deliver Express Shipments in time for any particular market, occasion or event, or on any particular lines and do not guarantee to arrive at or depart from any particular point at a specified time. The time schedules published by the Carriers are the schedules that they endeavor to maintain, but same are not guaranteed.

National Bus Traffic Association, Inc., Agent; National Express Tariff, Section B, Rule 11(c) (hereafter Bus Tariff), on file with the Interstate Commerce Commission. As a tariff filed with the Interstate Commerce Commission, this tariff has the force of law, and defendant cannot deviate from it. *E.g., Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520, 59 S.Ct.

612, 614, 83 L.Ed. 953 (1939). The terms of a properly published tariff are incorporated into all agreements between carriers and shippers. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619, 621 (7th Cir.1979) (Lay, J.[5]). The shipper, as well as the carrier, is presumed to know the law, and thus to have understood the terms of the tariff. *Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Co. v. Fink*, 250 U.S. 577, 581, 40 S.Ct. 27, 27–28, 63 L.Ed. 1151 (1919); *F. Burkhart Mfg. Co. v. Fort Worth & D.C. Ry. Co.*, 149 F.2d 909, 910 (8th Cir.1945); *Aero Trucking, Inc.*, 594 F.2d at 621.

█ A specific application of the rule that parties cannot make individual contracts at variance with the applicable tariff is that parties cannot make special contracts requiring the delivery of goods by a specific time. *See, e.g., Davis v. Cornwell*, 264 U.S. 560, 561–62, 44 S.Ct. 410, 410–11, 68 L.Ed. 848 (1924); *Cooper v. Chicago, Rock Island & Pacific Railroad Co.*, 217 F.2d 683, 685 (8th Cir.1954). A carrier's duty under a tariff such as the Bus Tariff is to transport goods with reasonable dispatch. *New York, Philadelphia & Norfolk Railroad Co. v. Peninsula Produce Exchange*, 240 U.S. 34, 38–39, 36 S.Ct. 230, 231–32, 60 L.Ed. 511 (1916); *Turner's Farms, Inc. v. Maine Central Railroad Co.*, 486 F.Supp. 694, 697 (D.Me. 1980).

█ In the present action, defendant delivered the package within 20 hours of receiving it, and plaintiff is not claiming that this time period constituted other than reasonable dispatch. Instead, plaintiff claims that defendant fraudulently misrepresented, promised, guaranteed, and war-

---

3. The Court should also note that defendant has now cited to some important cases, *e.g., Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir.1979), which defendant did not bring to Judge Devitt's attention.

4. This section, formerly codified at 49 U.S.C. § 6(7), is known as the antidiscriminatory provision. The purpose of this provision is to ensure the existence of one uniform rate. *See Chicago, Burlington & Quincy Railroad Co. v. Ready Mixed Concrete Co.*, 487 F.2d 1263, 1266 (8th Cir.1973). Congress enacted this antidiscri-

minatory section to eliminate the secret discounts and preferential treatment carriers were giving to big shippers in the late 19th century. *Louisville & Nashville Railroad Co. v. Mead Johnson & Co.*, 737 F.2d 683, 686 (7th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 386, 83 L.Ed.2d 320 (1984).

5. The Honorable Donald P. Lay, now Chief Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

ranted that defendant could deliver the package by 8:30 a.m. of the following day. Complaint ¶¶ 15, 16. The Bus Tariff, however, explicitly states that defendant does not guarantee delivery by a specific time, and the law imputes to plaintiff knowledge of this published tariff. *E.g., Fink*, 250 U.S. at 581, 40 S.Ct. at 27; *F. Burkhart Mfg. Co.*, 149 F.2d at 910; *Aero Trucking, Inc.*, 594 F.2d at 621. Plaintiff, moreover, is in effect trying to establish that he and defendant had an agreement to deliver the package by a specific time, but such agreements are clearly prohibited under the Act. *E.g., Davis*, 264 U.S. at 561–62, 44 S.Ct. at 410–11; *Cooper*, 217 F.2d at 685.

Since defendant could not have been obligated to deliver the package by 8:30 a.m., plaintiff simply does not have a cause of action against defendant under the Act. Plaintiff tries to escape this result by arguing that defendant's misrepresentation constituted fraud in the inducement. *Citing Mitchell v. Union Pacific Railroad Co.*, 188 F.Supp. 869, 873–74 (S.D.Cal.1960). In *Mitchell*, the court concluded that a carrier's fraud in the inducement would allow a plaintiff to recover beyond the liability limit established by the tariff.[6] The *Mitchell* court, however, did not hold that allegations of fraud in the inducement can alter a carrier's duty to a shipper as specified in a tariff. (If *Mitchell* so holds, it is unsound.)

The Seventh Circuit has concluded that allegations of fraud in the inducement do not give rise to an action against a carrier for misquoting a term of the shipping contract at variance from the term mandated by the tariff. *Aero Trucking, Inc.*, 594 F.2d at 621–22; *see also Consolidated Freightways v. Terry Tuck, Inc.*, 612 F.2d 465, 466 (9th Cir.) (per curiam) (shipper has no claim for relief based on carrier's fraudulent misquotation of tariffs), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980). The Eighth Circuit, moreover, cited both of these cases with approval in *Missouri Pacific Railroad Co. v. Rutledge Oil Co.*, 669 F.2d 557, 559 (8th Cir.1982) (per curiam). In *Missouri Pacific Railroad Co.*, the shipper claimed that it should not have to pay certain fees because the carrier fraudulently concealed the existence of the charges. Even though the carrier might have committed fraud, the court concluded that the shipper could not escape the charges because to allow such an avoidance would constitute a rate preference in violation of the Act's antidiscriminatory provision (49 U.S.C. § 10761). *See Missouri Pacific Railroad Co.*, 669 F.2d at 558–59; *see also F. Burkhart Mfg. Co.*, 149 F.2d at 910 (8th Cir.1945) (allegations of fraudulent rate quotation did not state a cause of action).

The four previously cited cases concluding that allegations of fraud do not provide a basis for varying from a term designated by a tariff all dealt with rates or charges. Their logic, however, applies equally to the present action since the express disclaimer of delivery by a specific time, just like a rate, is a term specified by a published tariff. As a matter of law, plaintiff is "conclusively presumed" to know the terms of the tariff, and therefore plaintiff cannot claim that he was deceived by false representations at variance with the tariff's provisions. *F. Burkhart Mfg. Co.*, 149 F.2d at 910 (8th Cir.1945); *accord Aero Trucking, Inc.*, 594 F.2d at 622–23. Plaintiff's allegations of fraud, therefore, do not alter the conclusion that plaintiff does not have a cause of action against defendant under the Act.

Based on the foregoing, **IT IS ORDERED** that defendant's motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**6.** The Carmack Amendment, 49 U.S.C. §§ 10730 and 11707 (formerly 49 U.S.C. § 20(11)), allows a carrier to limit its liability.