**Charles PAULSON, d/b/a Chuck Paulson & Sons Construction, Appellant,**

v.

**GREYHOUND LINES, INC., Appellee.**

No. 86–5130.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1986.

Decided Nov. 7, 1986.

Al Baker, Fargo, N.D., for appellant.

Lynn C. Truesdell, Minneapolis, Mn., for appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and TIMBERS,[*] Senior Circuit Judge.

LAY, Chief Judge.

Charles Paulson sued Greyhound Lines, Inc. (Greyhound) for damages allegedly caused by Greyhound's failure to deliver an express package on time. A jury found that Greyhound fraudulently induced Paulson to ship the package via Greyhound. Believing the jury finding to be against the weight of the evidence, the presiding district court judge[1] ordered a new trial and recused himself from the case. A second district court judge[2] later granted Greyhound's motion for summary judgment, on the ground that the carrier's National Express Tariff insulated it from liability and damages notwithstanding any possible fraudulent inducement. *See Paulson v. Greyhound Lines, Inc.*, 628 F.Supp. 888 (D.Minn.1986).

On appeal, Paulson contends that Greyhound cannot use its tariff to avoid liability for fraudulent inducement of a contract.

[*] The HONORABLE WILLIAM C. TIMBERS, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

[1] The Honorable Edward Devitt, United States District Court for the District of Minnesota.

[2] The Honorable Harry H. MacLaughlin, United States District Court for the District of Minnesota.

Paulson challenges both the grant of a new trial and the order of summary judgment. We find that Paulson's position is without merit and affirm the district court's grant of summary judgment.[3]

## Background

The Minnesota Department of Transportation announced that it would accept bids in St. Paul on a certain state construction project until 9:30 a.m. on May 20, 1983. Paulson, a contractor from northwestern Minnesota, decided to submit a bid. The bid was completed on May 19, the day before the deadline. Gary Paulson, Charles Paulson's son, undertook the task of finding a way to get the bid to St. Paul by early the next morning. After seeing an advertisement in the yellow pages, Gary Paulson called Greyhound's Fargo, North Dakota office. It is alleged that James Houseman, a Greyhound employee, assured Gary Paulson that Greyhound would deliver the package by 8:30 the next morning. Gary Paulson turned over the package to Greyhound, which did not deliver it until 11:30 a.m. on May 20, 1983, some two hours after the bid deadline. Paulson alleged that his bid would have been the lowest on the construction project.

When Gary Paulson gave the package to Greyhound, he received a receipt/busbill which stated in small, but bold print that the transaction was "SUBJECT TO TARIFF REGULATIONS LIABILITY" and that Greyhound's liability was limited to $50 per package. The referenced National Express Tariff, as well as limiting the carrier's liability, includes the following provision:

> Carriers do not agree to deliver Express Shipments in time for any particular market, occasion or event, or on any particular lines and do not guarantee to arrive at or depart from any particular point at a specified time. The time schedules published by the Carriers are the schedules that they endeavor to maintain, but same are not guaranteed.

National Bus Traffic Association, Inc., Agent; National Express Tariff § B, Rule 11(c), at B–6 (effective Jan. 2, 1979).

## Discussion

We begin with the premise that Paulson's shipment from Fargo, North Dakota to St. Paul, Minnesota was governed by the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917 (1982). That statute allows common carriers like Greyhound to provide services only in accordance with published tariffs. *See id.* § 10761(a). Greyhound's tariff does not allow it to promise or guarantee delivery of express packages at any given time or for any given event. This tariff is incorporated by law into all of Greyhound's shipping contracts. As noted earlier, the receipt/busbill Gary Paulson received incorporated the tariff.

Both the shipper and carrier are presumedly aware of the tariff and its provisions. *Pittsburgh, C., Chi. & St. L. Ry. v. Fink,* 250 U.S. 577, 581, 40 S.Ct. 27, 28, 63 L.Ed. 1151 (1919); *F. Burkhart Mfg. Co. v. Fort Worth & D.C. Ry.,* 149 F.2d 909, 910 (8th Cir.1945); *Aero Trucking, Inc. v. Regal Tube Co.,* 594 F.2d 619, 621 (7th Cir. 1979). In the present context, this means that Paulson is deemed to have known that Greyhound could not guarantee timely delivery to St. Paul, despite any promises Houseman, the agent, may have made.

The Supreme Court recently reaffirmed the overriding nature of the tariff in relationships between shippers and carriers. In *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* —— U.S. ——, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986), the Court expressly honored its holding in *Keogh v. Chicago & Nw. Ry.,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). The *Keogh* Court had stated that "rights as defined by the tariff cannot be varied or enlarged by ei-

---

**3.** We need not address the new trial issue, as the issuance of summary judgment renders the suf-ficiency of the evidence question moot.

**508**

ther contract or tort of the carrier." *See id.* at 163, 43 S.Ct. at 49.

It is clear that Greyhound or its agents could not as a matter of law have made any warranty to deliver Paulson's bid before the deadline.[4] It follows that Greyhound could not have breached any such warranty or contract for time-specific delivery.[5] The district court properly entered summary judgment in favor of the carrier.

While this result may on the surface appear to unjustly provide carriers the upper hand in shipping transactions, the result is exactly the opposite. Congress passed the tariff requirement to prevent discrimination by common carriers. *Armour Packing Co. v. United States,* 209 U.S. 56, 72, 28 S.Ct. 428, 431–32, 52 L.Ed. 681 (1908); *Aero Trucking,* 594 F.2d at 621. By not allowing any promises or prices outside the tariff, the law ensures that all shippers will receive the same services for the same price. As this court pointed out in *Clegg v. St. Louis & S.F. R.R.,* 203 F. 971, 973 (8th Cir.1913), a special agreement to expedite a shipment at regular rates is one form of discrimination.

The judgment of the district court is affirmed.

---

**4.** Paulson cites *Mitchell v. Union Pac. R.R.,* 188 F.Supp. 869 (S.D.Cal.1960), for the proposition that Greyhound's alleged fraudulent inducement removed the tariff's protection. We find this citation unpersuasive. *Mitchell* involved *limitation* of liability under the tariff. In our case, however, we find that there could have been no warranty at all, thus no liability. As the district court noted, *see* 628 F.Supp. at 893, *Mitchell* is "unsound" if it would allow disregard of the tariff in determining the scope of a shipping

contract. *See also Missouri Pac. R.R. v. Rutledge Oil Co.,* 669 F.2d 557, 559 (8th Cir.1982).

**5.** Greyhound's only duty under the tariff was to transport the package with reasonable dispatch. *See Chicago & A. R.R. v. Kirby,* 225 U.S. 155, 164, 32 S.Ct. 648, 649–50, 56 L.Ed. 1033 (1912). Greyhound met this duty by delivering the package in approximately 20 hours.