REBEL MOTOR FREIGHT, INC.

v.

SOUTHERN BEVERAGE CO., INC., et al.

Civ. A. No. 87–261–B.

United States District Court, M.D. Louisiana.

Oct. 6, 1987.

G. Steven Duplechain, Baton Rouge, La., for plaintiff.

Raymond J. Salassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants.

POLOZOLA, District Judge.

This matter is before the court on the motion of the defendants [1] to refer certain issues to the Interstate Commerce Commission and to stay these proceedings pending the Commission's resolution of the referred issues. Specifically, defendants challenge the reasonableness and lawfulness of plaintiff's rates and practices under the revised Interstate Commerce Act, 49 U.S.C. 10101, *et seq.*

The plaintiff, Rebel Motor Freight, Inc. ("Rebel"), has sued Southern Beverage Co., Inc. for "undercharges" arising from motor carrier shipments of beer from Houston, Texas to Baton Rouge, Louisiana. The undercharges result from a difference between the tariff rate on file with the Interstate Commerce Commission ("I.C.C."), which legally should have been charged for shipping, and the rate plaintiff actually charged the defendant.

The parties entered into price negotiations in early 1984. A letter of March 21, 1984 from plaintiff to defendant confirmed a price quote of "95 cents per mile based on 266 miles" between Houston and Baton Rouge. For the next seventeen months plaintiff carried 412 truckloads of defendant's product and billed each shipment at the agreed rate of 95 cents per mile. Defendant likewise paid the invoiced amounts after each shipment. The parties ceased doing business in August 1985. In February of 1986 plaintiff ceased its operations and began liquidation proceedings. At this time auditors discovered the deficiency in the amount of $71,417.79 that plaintiff

---

1. The defendants named herein are: Southern Beverage Co., Inc.; William N. Carter, Sr., as liquidator; William H. Carter, Sr., individually; William H. Carter, Jr., individually; and Leigh Townsend Carter, individually.

should have charged to the defendant under the I.C.C. regulations.

Plaintiff concedes that both parties believed the negotiated rates were proper and appropriate. It now claims the law requires that regardless of price misquotations, the tariff rate filed with the I.C.C. must control. 49 U.S.C. 10761(a). Plaintiff further claims that since the filed tariff is unambiguous, it presents only questions of law which are proper for this court to decide.

Defendants, on the other hand, contend that the I.C.C. has primary jurisdiction over this case. They claim that the primary jurisdiction of the I.C.C. arises when the reasonableness of a rate or practice is called to question. 49 U.S.C. 10701(a), 10704(a)(1). Defendants label plaintiff's tariff and undercharge recovery as unreasonable and unlawful and have filed a counterclaim for the amount of the undercharges. Defendants also seek a stay of this proceeding and a referral of this matter to the I.C.C.

Questions involving recovery of freight undercharges primarily center upon two issues: whether the I.C.C. has primary jurisdiction over the dispute; and, whether the "filed tariff doctrine" precludes consideration of equitable defenses against the carrier. The case at bar raises both issues and each will be discussed separately.

■ The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The doctrine applies "where a claim is originally cognizable in the courts ... and enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body for

its views." *General American Tank Car Corp. v. El Dorado Terminal Co.,* 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361, cited in *United States v. Western Pacific Railroad Co., supra* at 77 S.Ct. 165. Primary jurisdiction is designed to produce uniformity and to bring agency expertise to bear on complicated technical questions. *Southern Pacific Transp. Co. v. San Antonio, Texas,* 748 F.2d 266, 272 (5th Cir. 1984). "Where the reasonableness of a rate is at issue, there must be preliminary resort to the Commission." *Great Northern Railway v. Merchants Elevator,* 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922). The determination of reasonableness

is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable and such acquaintance is commonly to be found only in a body of experts. But what construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute.

*Id.* at 291–92, 42 S.Ct. at 479. Thus, the courts often interpret the terms of a filed rate, but refer to the I.C.C. any questions concerning reasonableness of that rate. *Southern Pacific Transp. Co. v. San Antonio, Texas,* 748 F.2d at 272.

■ Plaintiffs insist that the sole issue before the court is one of tariff enforcement and not reasonableness. If such were the case, then any referral to the I.C.C. would depend upon a showing by the defendant of the propriety of asserting equitable defenses to the filed tariff or the technical ambiguity of the tariff's construction. Defendants, however have put the reasonableness of the tariff and the reasonableness of the practice of retroactive collection of undercharges at issue.[2] Defend-

2. I.C.C. authority to prevent unreasonable practices by rail carriers originates from two statutes: 49 U.S.C. 10701(a), which provides a practice related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chap-

ter 105 of this title must be reasonable; and, 49 U.S.C. 10704(a)(1), which authorizes the I.C.C. to order a carrier to stop a violation. *Seaboard System R.R. Inc. v. United States,* 794 F.2d 635, 637 (11th Cir.1986).

ants' answer and counterclaim raise the following issues: (1) whether it is reasonable to impose a uniform trailer load maximum weight limitation without regard to the size or type of the particular trailer; (2) whether the maximum weight provision in a rate tariff is an unreasonable practice in violation of 49 U.S.C. 10701(a), 10704(b), and 11705(b)(3) where the carrier was responsible for, and supervised, the process of loading the trailers used to transport the shipments in question; (3) whether plaintiff's tariff rule which provides for rating as a separate shipment the weight of a trailer load shipment that is in excess of a maximum weight specified in a carrier's rate tariff is unreasonable; (4) whether the "undercharges" claimed by plaintiff exceed a maximum reasonable level for the service actually provided in violation of 49 U.S.C. 10701(a), 10704(b), and 11705(b)(3); and, (5) whether plaintiff has properly calculated the allegedly due "undercharges." This court believes these questions should be resolved by the I.C.C. which has the expertise to answer them. Only the I.C.C. has the power to declare a tariff requirement unreasonable. *Western Transp. Co. v. Wilson and Co. Inc.*, 682 F.2d 1227, 1232 (7th Cir.1982). See *Texas & P.R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 448, 27 S.Ct. 350, 358, 51 L.Ed. 553 (1907) and *I.C.C. v. Atlantic Coast Line R.R.*, 383 U.S. 576, 579–80, 86 S.Ct. 1000, 1003–04, 16 L.Ed.2d 109 (1966).

■ Persuasive authority exists for the proposition that "filed tariffs have the force of law [and] equitable considerations cannot justify a carrier's failure to collect authorized tariff charges ..." *Illinois Central Gulf R.R. Co. v. Golden Triangle Wholesale Gas Co.*, 586 F.2d 588, 592 (5th Cir.1978). The I.C.C. requires common carriers to file their tariffs. 49 U.S.C. 10762(a)(1). Carriers may not charge more or less than the specified rate. 49 U.S.C. 11903. Deviation from the filed tariff is not permitted upon any pretext. *Louisville & Nashville R.R. v. Maxwell*, 237 U.S. 94, 98, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). Furthermore, the I.C.C. has traditionally and specifically refused to recognize equitable defenses to efforts to collect

undercharges. "Waiving undercharges based on carrier rate misquotations might lead to intentional misquotations by carriers seeking to discriminate in favor of particular shippers." *Seaboard System R.R., Inc. v. United States*, 794 F.2d 635, 638 (11th Cir.1986).

Changed circumstances have caused the Commission and the courts to reevaluate the previous policy of refusing to consider equitable defenses. Since the passage of the Motor Carrier Act of 1980, confusion has arisen in the circuits regarding the application of the "filed tariff doctrine" to the retroactive collection of freight "undercharges." In *Square D Co. v. Niagara Frontier Traffic Bureau*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986) the United States Supreme Court recently considered whether its prior holding that carriers were not subject to treble damage liability in private antitrust actions based on I.C.C. filed tariff rates was still valid. Among the grounds offered for reconsideration was that the prior ruling was inconsistent with the policy of the Motor Carrier Act of 1980. The Court stated:

> We may assume that this is the case ... that the *Keogh* decision was unwise as a matter of policy—but it nevertheless remains true that Congress must be presumed to have been fully cognizant of this interpretation of the statutory scheme, which had been a significant part of our settled law for over half a century, and that Congress did not see fit to change it when Congress carefully reexamined this area of the law in 1980. Id. at 1928 (footnote omitted).

See, also, *Motor Carrier Audit & Collection Co. v. United Food Service*, C.A. No. 87–C–298 (D.C. Colo. May 4, 1987) [Available on WESTLAW, DCT database].

The Seventh, Eighth, and District of Columbia Circuits have applied the *Square D* rationale and held that absent any "specific statutory provision or reliable piece of legislative history indicating a specific Congressional intent" to overturn longstanding policy, it is not within the realm of the

judiciary to do so.[3] The Eleventh Circuit and the Interstate Commerce Commission contend that I.C.C. jurisdiction to hear equitable defenses to claims for "undercharge" collections is not inconsistent with Supreme Court precedent or Congressional intent.[4] Furthermore:

> "Congress has now recognized the undesirable consequences of a statutory scheme that singlemindedly militated against the possibility of rate discrimination at the cost of rate making flexibility ..." Several changes permit activities which formerly were prohibited as discriminatory, and the statute now places greater reliance on market forces. As a result, the inability of a shipper to rely on a carrier's interpretation of a tariff is a greater evil than the remote possibility that a carrier might intentionally misquote an applicable tariff rate to discriminate illegally between shippers.

*Seaboard*, 794 F.2d at 638.

The I.C.C. reflected this change of policy in *Natl. Indust. Transp. League*, ___ ICC ___, Ex Parte No. MC–177 (October 14, 1986). The 11th Circuit in *Seaboard* affirmed the authority of the I.C.C. to give effect to the policies of the Interstate Commerce Act. The court distinguished the *Louisville & Nashville Railroad v. Maxwell, supra*, strict adherence to the filed tariff doctrine by stating that the *Maxwell* line of cases dealt only with the *court's* authority to grant equitable defenses to undercharge actions. The primary authority to give effect to the Interstate Commerce Act is the I.C.C. *Seaboard*, 794 F.2d at 638.[5]

■ The case at bar squarely falls into the fact pattern contemplated by the I.C.C. when it implemented its change in policy. The plaintiff and defendants negotiated an unpublished shipping price in good faith. Both parties observed the agreement over a period of time. The applicable tariff on file was not uncovered until the liquidation of the carrier. Plaintiff has stated that the pricing discrepancy arose due to negligence. Although the record is void of any indication of intentional deception intending to discriminate illegally between shippers, this court hesitates to follow the enlightened approach adopted by the Interstate

---

3. *Int'l Bhd of Teamsters v. ICC*, 801 F.2d 1423, 1429–30 (D.C.Cir.1986); *Paulson v. Greyhound Lines, Inc.*, 804 F.2d 506 (8th Cir.1986); *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731 (7th Cir.1986).

4. In short, our unreasonable practice jurisdiction gives us discretion to find that the tariff rate filed by motor carriers need not and should not be applied in a particular case. Defendant's contention that *Square D* and *RCCC* reaffirm the validity of the filed rate doctrine is without merit. As we explained in *Negotiated Rates*, neither decision involves the question of equitable defenses to a claim for undercharges. Nor do they indicate that the Commission is precluded from passing on the reasonableness of carrier practices pursuant to its express authority in section 10701(a). Although defendant fails to recognize it, we are not abolishing the requirement in section 10761 that carriers must continue to charge the tariff rate. Rather the issue here is simply whether we have the authority to consider all the circumstances surrounding an undercharge suit. The portions of *Square D* reaffirming that carriers must file their rates do not mean that we lack the authority to find, in an appropriate case, that allowing a carrier to collect the tariff rate would be unreasonable. *Wakefern Food Corp. v. Southwest Freightlines*, No. MC–C–10991 (May 21, 1987) found in C.C.H. Federal Carrier Reports par. 37,350.

5. Recent decisions affirming the new equitable defense position are: *Wakefern Food Corp. v. Southwest Freightliness*, No. MC–C–10991 (May 21, 1987) found in C.C.H. Federal Carrier Reports 37,250; *Maislin Transport, Ltd. v. House of Wines*, Civil Action No. 84–2431 (Dist.Ct.D.C. June 2, 1987); *INF Ltd. v. Spectro Alloys*, 651 F.Supp. 1405 (D.Minn.1987). Distinguishing cases are: *Inman Freight Systems v. Olin Corp.*, 807 F.2d 117 (8th Cir.1986) where I.C.C.'s new policy held inapplicable because the negotiated rate was published; *Regular Common Carrier Conference v. United States*, 793 F.2d 376 (D.C.Cir.1986) where filed tariff strictly construed against attempt to set future shipping price at a weighted average undeterminable by other shippers; *Paulson v. Greyhound Lines, Inc.*, 804 F.2d 506 (8th Cir.1986) precluding shipper's claim for breach of negotiated warranty where filed tariff contained no warranty; *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731 (7th Cir. 1986) where court declined to depart from an antiquated Supreme Court exception to the final judgment rule; and, *Int'l Bhd. of Teamsters v. I.C.C.*, 801 F.2d 1423 (D.C.Cir.1986) where the court refused to strike a questionable statutory restriction on rail mergers under the guise of interpretation.

Commerce Commission and the 11th Circuit in *Seaboard.* Instead the court adopts the position of the Seventh, Eighth and District of Columbia Circuits with respect to the Supreme Court's interpretation of judicial restraint found in *Square D.* As Justice Brandeis observed in commenting on the presumption of stability in statutory interpretation:

> Stare decisis is usually the wise policy because in most matters, it is more important that the applicable rule of law be settled than that it be settled right ... This is commonly true, even where the error is a matter of serious concern, provided correction can be had by legislation. *Burnet v. Coronado Oil & Gas,* 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting).

*Square D,* 106 S.Ct. at 1931. To overcome the longstanding statutory and judicial precedent forbidding deviation from a filed tariff would require the blessing of Congress. At present, there is no such blessing. As such, while I.C.C. review of the reasonableness of plaintiff's tariff is proper under the doctrine of primary jurisdiction, the defendants' equitable defenses to collection of freight undercharges are not properly reviewable by the I.C.C.

■ A district court has jurisdiction to review an I.C.C. decision whenever the court has referred a question to the I.C.C. for determination. 28 U.S.C. 1336(b). In *City of New Orleans v. Southern Scrap Material,* 704 F.2d 755 (5th Cir.1983), the Fifth Circuit concluded that it would not treat a district court stay as a "referral" for purposes of 1336(b) unless the district court explicitly states or clearly implies that it is referring the case. Therefore, the court specifically finds and holds that this case is hereby referred to the I.C.C. for further proceedings in accordance with this opinion.

Therefore:

IT IS ORDERED that defendants' motion to stay is GRANTED.

IT IS FURTHER ORDERED that defendants' motion to refer this case to the I.C.C. for an advisory opinion in accordance with this opinion is GRANTED.