### MISSOURI PACIFIC RAILROAD COMPANY, Appellee,

v.

### RUTLEDGE OIL COMPANY, Appellant.

### No. 81–1682.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1982.

Decided Jan. 22, 1982.

Kent Snapp, Richard L. Martin, Johnson, Lucas, Bush, Snapp & Burgess, Kansas City, Mo., for Mo. Pac. Railroad Co.

Phil M. Cartmell, Jr., W. Russell Welsh, Washington, D. C., Gage & Tucker, Kansas City, Mo., for appellant.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

PER CURIAM.

Rutledge Oil Company (Rutledge Oil) appeals from the district court's[1] orders granting Missouri Pacific Railroad Company (MoPac) summary judgment on its complaint for unpaid demurrage charges and dismissing Rutledge Oil's counterclaim for fraud. Rutledge Oil contends that the district court incorrectly concluded that its estoppel defense and counterclaim both contravened the antidiscrimination principle of the Interstate Commerce Act, 49 U.S.C. § 6(7) (1976).[2]

I. *Background.*

On May 25, 1974, a fire destroyed Rutledge Oil's plant in Kansas City, Missouri. According to the appellant, a MoPac representative gave Rutledge Oil's president misleading advice concerning the most economical way to handle its railroad cars then en route to the destroyed Kansas City plant. Rutledge Oil asserts that it decided to leave its cars on MoPac's track in reliance on MoPac's assurances that no demurrage charge would be assessed.

On July 27, 1976, MoPac sued Rutledge Oil under the tariff to collect $25,920 in demurrage charges incurred between May 24, 1974 and September 27, 1974. In response, Rutledge Oil argued that MoPac should be estopped from asserting its claim because it incorrectly represented that Rutledge Oil would not be charged for keeping its cars on MoPac's tracks. Rutledge Oil also counterclaimed for fraud, claiming that

MoPac should not profit from concealing from Rutledge Oil its option to hold its cars on its own tracks, thereby avoiding demurrage charges.[3]

On April 14, 1981, the district court granted MoPac summary judgment on its complaint. It rejected Rutledge Oil's estoppel defense and held that allowing Rutledge Oil to avoid paying the tariff's demurrage charges could be construed as a rate preference forbidden by the Interstate Commerce Act. The court subsequently dismissed the counterclaim for the same reason, and entered final judgment for MoPac on June 22, 1981.

II. *Discussion.*

This court has previously noted that the antidiscrimination provision in 49 U.S.C. § 6(7) is so strong "that the courts have generally refused to recognize an otherwise justifiable defense of estoppel." *Chicago, Burlington & Quincy Railroad Co. v. Ready Mixed Concrete Co.,* 487 F.2d 1263, 1266 (8th Cir. 1973) (carrier could recover switching charges under tariff despite agreement to accept lesser charges). *See also Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink,* 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919) (carrier not estopped from suing under tariff to collect freight undercharge).

Rutledge Oil maintains that it falls within an exception to the antidiscrimination principle. It contends that a consignee receiving a shipment of goods marked "freight prepaid" may raise the estoppel defense where the carrier brings an action for freight charges and the consignee has already paid such charges to the consignor. *See, e.g., Southern Pacific Transportation Co. v. Campbell Soup Co.,* 455 F.2d 1219

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

2. That section provides:
   [N]or shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points

named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time[.]

3. The parties agree that the tariff filed with the ICC establishes demurrage charges to be paid for privately owned railroad cars held on railroad-owned track, but exempts privately owned cars held on privately owned track.

(8th Cir. 1972); *Consolidated Freightways Corp. of Delaware v. Admiral Corp.,* 442 F.2d 56 (7th Cir. 1971); *Davis v. Akron Feed and Milling Co.,* 296 F. 675 (6th Cir. 1924). Additionally, it argues that carriers may be estopped from collecting excess charges incurred as a result of sending goods by a needlessly expensive route where the choice of route was left to the carrier. *See, e.g., Northern Pacific Railway Co. v. Solum,* 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed. 1221 (1918); *Johnson Machine Works, Inc. v. Chicago, Burlington & Quincy Railway Co.,* 297 F.2d 793 (8th Cir. 1962).

Rutledge Oil does not fit within either of these exceptions. In the "freight prepaid" cases the consignee still paid the applicable charges. Application of the estoppel doctrine in the present case, however, would allow Rutledge Oil to avoid paying the full amount of the tariff altogether. In the misrouting cases, the consignee was protected from payment of charges it would not have chosen to incur. In this case, Rutledge Oil actually agreed to leave its cars on MoPac's tracks. This case most closely resembles those involving the misquotation of rates and subsequent undercharge in which courts have consistently refused to recognize estoppel defenses. *See, e.g., Consolidated Freightways Corp. of Delaware v. Terry Tuck, Inc.,* 612 F.2d 465 (9th Cir.) (dismissing counterclaim for fraud predicated on misquotation of tariffs), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980); *Aero Trucking, Inc. v. Regal Tube Co.,* 594 F.2d 619 (7th Cir. 1979) (estoppel unavailable for reasonable reliance on fraudulent understatement of charges); *Consolidated Freightways Corp. of Delaware v. Forty-Eight Insulations, Inc.,* 501 F.2d 1400 (7th Cir. 1974) (shipper unwittingly designating more expensive route cannot later assert estoppel defense).

We realize that the equities lie with Rutledge Oil if its version of the facts is correct. Nonetheless, previous decisions preclude assertion of either estoppel or a claim for fraud where the result would be a rate preference. As the Fifth Circuit remarked in a factually similar case, "[e]quitable considerations cannot * * * be invoked as the basis for an estoppel to collect [authorized tariff] charges. * * * Filed tariffs are public information * * * of which shippers should be aware." *Illinois Central Gulf Railroad Co. v. Golden Triangle Wholesale Gas Co.,* 586 F.2d 588, 592 (5th Cir. 1978) (gas company liable for tariff despite assurances that no charge would be made).

Accordingly, we affirm the district court's judgment.