MCI TELECOMMUNICATIONS
CORPORATION, Plaintiff,

v.

The BEST TELEPHONE COMPANY,
INC., Defendant.

No. 93–1581–CIV.

United States District Court,
S.D. Florida,
Miami Division.

April 26, 1994.

Lawrence D. Smith, Walton, Lantaff, Schroeder & Carson, Miami, FL, for Plaintiff.

Paul J. Schwiep, Aragon, Martin, Burlington, Weil & Crockett, P.A., Miami, FL, for Defendant.

### ORDER ON PENDING MOTIONS

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment (DE # 17); Defendant's Rule 56(f) Motion to Deny Summary Judgment, Defer Ruling or to Enlarge (DE # 32); and Defendant's Motion to Amend Answer to Assert Counterclaim (DE # 33). After considering the motions, responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following memorandum order.

### MEMORANDUM

### I. BACKGROUND

MCI Telecommunications Corporation ("MCI") brings this action against The Best Telephone Company, Inc. ("BEST") to recover unpaid charges for telecommunications services provided by MCI under the terms and conditions of MCI Tariff FCC No. 1 ("the Tariff"). BEST denies that it owes

that $709,485.08 alleged by MCI and contends that MCI's claim is barred by its willful misconduct. BEST has asserted the affirmative defenses of unclean hands, accord and satisfaction, waiver and estoppel and breach of the Tariff. (Joint Pre–Trial Statement, at p. 1; BEST's Answer, at p. 2).

MCI provided VNET, or virtual private network services, and MCI 800 service to BEST in bulk. BEST in turn repackaged these services and sold them to customers. (Def. Rule 56(f) Mot., at p. 2). MCI provided its services to BEST under the terms and conditions set forth in MCI Tariff F.C.C. No. 1. The Tariff is the contract governing the rights and obligations of MCI and BEST.

MCI contends that it performed its obligations under the Tariff while BEST failed to meet its payment terms. The Plaintiff also argues that BEST did not put MCI on written notice of disputed charges within six months of receipt of the invoice bearing the disputed charge (as required by Tariff Section B–7.05), nor did it deny that it owed the amounts stated by MCI.

MCI filed this action on August 17, 1993 alleging BEST was in breach of the Tariff because of its failure to pay $733,517.96 in overdue charges. BEST filed its answer on November 1, 1993, contending that it was not liable because of MCI's willful misconduct. MCI filed its Motion for Summary Judgment on November 12, 1993, alleging that there was no material issue of fact in dispute and MCI was entitled to judgment as a matter of law. BEST filed its Rule 56(f) Motion on December 7, 1993, opposing the Plaintiff's Motion for Summary Judgment on the ground that MCI had failed to engage in discovery.

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit has explained:

In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh*, 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.*, 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics [Techniques, Inc. v. Wackenhut Protective Systems, Inc. ]*, 669 F.2d [1026] at 1031 [ (5th Cir.1982) ]; *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh*, 651 F.2d at 991. The moving party must demonstrate that the facts underlying all

the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513.

In another case the Supreme Court declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added).

MCI contends that it is entitled to summary judgment because the Communications Act of 1934 prohibits BEST from asserting both its contractual defenses and its proposed counterclaim for willful misrepresentation. BEST argues that MCI's summary judgment motion should be denied pursuant to Fed.R.Civ.P. 56(f) because MCI failed to provide BEST with necessary discovery. BEST has not addressed in detail the merits of MCI's motion.

The parties are in agreement on two points: (1) the Tariff governs their rights and obligations and (2) BEST is indebted to MCI for some amount of unpaid charges, though not necessarily the $709,485.08 sought by MCI. (Joint Pre–Trial Stip., at p. 1). The issues for the Court to determine in considering MCI's motion for summary judgment and BEST's motion for leave to assert a counterclaim are as follows: (1) are the Defendant's affirmative defenses precluded as a matter of law? If the defenses *are* available to the Defendant, then (2) do they raise a material issue of fact? If the defenses are *not* available, then (3) does a material issue of fact exist as to the amount BEST owes MCI?

## B. COMMUNICATIONS ACT OF 1934

The Communications Act of 1934 requires that all telecommunications service providers must file a listing of the terms and conditions under which they will provide services to their customers with the Federal Communications Commission. This listing, known as a "tariff," is a public document. 47 U.S.C. § 203(a). A tariff filed with the F.C.C. must set forth the carrier's charges, classifications, practices and regulations. 47 U.S.C. § 203(a). The F.C.C. regulates the substance of tariff provisions. 47 U.S.C. § 203(b).

■ Under the "filed tariff doctrine" (also known as the "filed rate doctrine") a tariff filed with the F.C.C. supersedes all other agreements between the parties. Id. § 203(c); *Marco Supply Co. v. American Tel. & Tel. Communications, Inc.*, 875 F.2d 434, 436 (4th Cir.1989). The tariff is more than a contract, it exclusively controls the rights and liabilities of the parties as a matter of law. *Carter v. American Tel. & Tel. Co.*, 365 F.2d 486, 496 (5th Cir.1966), *cert. denied.* 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) citing *Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.*, 303 F.2d 692, 696 n. 12 (5th Cir.1962); *American Tel. & Tel. Co. v. Florida–Texas Freight, Inc.*, 357 F.Supp. 977, 979 (S.D.Fla.1973), *aff'd* 485 F.2d 1390 (5th Cir. 1973); *Schaafs v. Western Union Tel. Co.*, 215 F.Supp. 419 (E.D.Wis.1963). The filed tariff doctrine precludes a customer from raising equitable defenses to the collection of the filed tariff. *See,* e.g. *Texas & P.R. Co. v. Mugg & Dryden*, 202 U.S. 242, 245, 26 S.Ct. 628, 630, 50 L.Ed. 1011 (1906)[1].

The Communications Act of 1934 requires telecommunications providers to charge their customers the specific amount designated in their tariff for services. 47 U.S.C. § 203(c). A provider who charges more or less than the tariff amount is subject to a fine of $6,000 for every offense and $300 per day for each day the offense continues. 47 U.S.C. § 203(e).

In *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the Supreme Court stated that the filed tariff doctrine was established in the 19th century to prevent carriers from intentionally "misquoting" rates to shippers as a means of offering them under-the-table discounts or rebates. *See Maislin* at 126–28, 110 S.Ct. at 2766, citing S.Rep. No. 46, 49th Cong., 1st Sess., 181, 188–190, 298–200 (1886). Congress developed the published tariff system as a way of preventing shipping clerks from deliberately misstating rate quotations for favored shippers, while those shippers without a special relationship would be compelled to pay the difference. *Id.*

This rationale was originally set forth in *Louisville & N.R. Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915), where the court held that a train passenger who had been mistakenly charged a lower rate by a ticket agent did not have a defense against the subsequent collection of the higher tariff rate by the railroad. The Supreme Court stated:

> Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

237 U.S. at 97, 35 S.Ct. at 495.

Courts rigid adherence to the filed tariff doctrine often has harsh consequences. In *Marco Supply*, a case brought under the Communications Act of 1934, the Plaintiff alleged that it had entered into a contract for telephone services with AT & T Communication, Inc., based upon AT & T's oral and written quotation of its installation and monthly service rates. After performance of

---

1. Cases decided under the Interstate Commerce Act ("ICA") are controlling precedent for interpreting the effect of tariffs under the Communications Act of 1934 because common carrier communications companies were regulated under the ICA prior to the passage of the Communications Act. *American Broadcasting Companies, Inc. v. F.C.C.*, 643 F.2d 818, 821 n. 2 (D.C.Cir. 1980); *Electronic Indus. Asso. v. F.C.C.*, 554 F.2d 1109, 1115 n. 16 (D.C.Cir.1976).

the contract began, AT & T charged Marco Supply 50 percent more than the quoted amounts based upon the terms of the tariff filed with the F.C.C. Marco Supply filed a suit, alleging breach of contract and willful misrepresentation. The United States District Court for the Western District of Virginia dismissed the complaint for failure to state a claim upon which relief could be granted, and the Fourth Circuit Court of Appeal affirmed. Applying the filed tariff doctrine, the Fourth Circuit explained that "a regulated carrier must charge the tariff rate established with the appropriate regulatory agency, even if it has quoted or charged a lower rate to its customer." *Marco Supply,* 875 F.2d at 436.

In an opinion critical of *Marco Supply,* the District Court of Rhode Island in *MCI Telecommunications Corp. v. TCI Mail, Inc.* (*"TCI Mail"*) noted that the filed tariff doctrine "could permit a carrier deliberately to misrepresent its rates to unwitting customers and then demand the full tariff amount after the contract is performed." 772 F.Supp. 64, 67 (D.R.I.1991). Nevertheless, the Court in *TCI Mail* held that the filed tariff doctrine prohibits a telecommunications provider from deviating in any way from its published tariffs. *Id.*

*TCI Mail* involved an action by MCI to recover an unpaid bill for telecommunications services. The Defendant, TCI Mail, Inc., asserted a counterclaim, alleging that MCI had tortiously misrepresented the rate TCI Mail would be charged. MCI moved to dismiss the counterclaim for failure to state a claim upon which relief could be granted because the filed tariff doctrine states that any representations made by the parties contrary to the terms of the tariff are irrelevant. The tariff controls.

The court in *TCI Mail* denied the plaintiff's motion to dismiss the counterclaim because "[b]y its own terms, the MCI Tariff does not limit MCI's liability if judicial or administrative proceedings establish that MCI committed 'willful misconduct.'" *TCI Mail* at p. 67. The court in *TCI Mail* considered its holding consistent with the filed tariff doctrine because the cause of action asserted by the defendant in its counterclaim

was specifically permitted by the express terms of the tariff. *See also Stand Buys, Ltd. v. Michigan Bell Tel. Co.,* 646 F.Supp. 36, 37–38 (E.D.Mich.1986) (applying "willful misconduct" clause of carrier's tariff, but concluding that no evidence of willful misconduct existed at summary judgment stage).

In contrast, the Fourth Circuit in *Marco Supply,* dismissed the plaintiff's misrepresentation claim "despite the presence of a clause in the tariff permitting claims for 'willful misconduct.'" *Marco Supply* at 436. Explaining the seemingly unfair result, the Fourth Circuit stated:

> Marco's problem in this case is that while it may have equity on its side, the law is against it. The general case law is that a regulated carrier *must* charge the tariff rate established with the appropriate regulatory agency, even if it has quoted or charged a lower rate to its customer (citations omitted) ... To do otherwise would be giving a preference to and discriminating in favor of the customer in question. Furthermore, the aggrieved customer cannot assert that the carrier is estopped to charge the actual tariff rate because customers are presumed to know what the applicable tariff is. *Missouri P.R. Co. v. Rutledge Oil Co.,* 669 F.2d 557, 559 (8th Cir.1982); *Aero Trucking, Inc. v. Regal Tube Co.,* 594 F.2d 619, 621 (7th Cir.1979).

875 F.2d at 436.

█ It is well established in this Circuit that the filed tariff doctrine precludes defenses available to a defendant in a standard contract dispute. The Eleventh Circuit recently considered a carrier's tariff claim and rejected the defendant's argument that the common carrier had orally agreed to waive tariffed charges. In *American Transport Lines v. Wrves,* 985 F.2d 1065 (11th Cir. 1993), the court held that "[o]nce a tariff is approved [by the Federal Maritime Commission], 'the rate must be charged' and paid regardless of mistake, inadvertence or contrary intention of the parties," *Id.* at 1066–1067, quoting *Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatambu Squares,* 508 F.2d 1116, 1121 (5th Cir.1975).

Similarly, in *Illinois C.G.R. Co. v. Golden Triangle Wholesale Gas Co.*, 586 F.2d 588 (5th Cir.1978), the Fifth Circuit[2] held that a railroad was required to collect certain storage charges under its tariff even though it had entered into an agreement with a shipper that the tariff would not apply. In reaching its decision, the court explained that equitable considerations could not justify a carrier's failure to collect authorized tariff charges, nor could they be invoked as the basis for estoppel to collect such charges. *Id.* at 592. *See also, Missouri P.R. Co. v. Rutledge Oil Co.*, 669 F.2d 557, 559 (8th Cir.1982) (Interstate Commerce Act precludes shippers from asserting estoppel defense); *Consolidated Freightways Corp. v. Terry Tuck, Inc.*, 612 F.2d 465, 466 (9th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980) (counterclaim for fraud dismissed).

Finally, the Eleventh Circuit recently held that even if a common carrier makes fraudulent misrepresentations regarding its tariff to the regulatory agency itself, a customer still has no cause of action for fraud. *Taffet v. Southern Co.*, 967 F.2d 1483 (en banc) (11th Cir.1992) (*"Taffet II"*).

In *Taffet v. Southern Co.*, 930 F.2d 847 (11th Cir.1991), vacated, rehearing en banc granted, *Taffet v. Southern Co.*, 958 F.2d 1514 (11th Cir.1992), *cert. denied Taffet v. Southern Co.*, —— U.S. ——, 113 S.Ct. 657, 121 L.Ed.2d 583 (*"Taffet I"*), the plaintiffs alleged that the defendant utilities fraudulently understated their income in regulatory agency filings to justify higher rates. The Eleventh Circuit's analysis focused on the filed tariff doctrine's purpose of preventing unequal rate quotations to customers. The court found that permitting the plaintiffs' RICO action would create an incentive for utilities to present the regulatory agency with accurate information. *Id.* at 856. Thus, the court concluded, the purpose behind the filed tariff doctrine would best be served by allowing a cause of action for fraud against a regulatory agency.

Rehearing *Taffet I* en banc, the Eleventh Circuit reversed itself and rejected a fraud exception to the filed tariff doctrine. *Taffet II*, 967 F.2d at 1483. The court noted that the Eighth Circuit had recently held that the filed tariff doctrine prohibited a cause of action for fraud by rate payers in a case in which it was alleged that utilities had bribed regulators in exchange for higher rate approval. *Id.* at 1489, citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 489 (8th Cir.1992), *cert. denied* 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992).

Based upon the foregoing, the Court finds that BEST's affirmative defenses are precluded as a matter of law. BEST contends in its answer that despite its admitted delinquency in payment, BEST is not liable because of MCI's willful misconduct. However, cases applying the filed tariff doctrine clearly state that a telecommunications provider's conduct is completely irrelevant to the issue of liability, even if the conduct was fraudulent. *See Marco Supply*, supra; *Missouri P.R. Co. v. Rutledge Oil Co.*, 669 F.2d 557, 558–59 (8th Cir.1982); *Consolidated Freightways Corp.*, 612 F.2d at 466; *Aero Trucking, Inc.*, 594 F.2d at 622; *Illinois C.G.R. Co.*, 586 F.2d at 592. As discussed above, even acts of fraud by a utility against the regulatory agency itself do not give rise to a cause of action. *See Taffet II*, supra. Courts must look to the tariff, and the tariff only, in determining the rights and liabilities of the parties.

The applicable provision of the Tariff at issue in this action states: "The customer is responsible for payment of all charges for services furnished to the customer or its joint or authorized users." (Tariff, Section B–7.01). The Tariff further provides that MCI's bills are payable upon receipt and amounts not paid within 30 days after the date of the invoice are considered past due. (Tariff, Section B–7.03).

In addition, the Tariff gives the customer six months from the date the invoice was rendered to provide MCI with written notice of a dispute. If the customer does not give MCI the required notice, the invoice is deemed to be correct and binding on the customer. (Tariff, Section B–7.05). No such

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the 11th Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

written notice disputing any MCI invoices has been received from BEST that applies to the amounts claimed by MCI. (McCumber Aff., at para. 14).

■ BEST argues that MCI's Motion for Summary Judgment should be denied pursuant to Fed.R.Civ.P. 56(f) because it failed to cooperate in discovery. One of the grounds argued by BEST is MCI's failure to produce for BEST a copy of the complete Tariff. (Best Rule 56(f) Mot., at p. 2). Thus, BEST is essentially arguing that it cannot be held liable under the provisions of the Tariff because the plaintiffs never produced it. However, under the filed tariff doctrine, BEST is presumed to be aware of the terms of the tariff. *Missouri Pacific Railroad,* 669 F.2d at 559; *Aero Trucking,* 594 F.2d at 621. Moreover, the tariff is a public document that is available for inspection or copying at the F.C.C. offices in Washington D.C. 47 U.S.C. § 203(a).

In sum, the Court finds that the defendant's affirmative defenses of (1) unclean hands, (2) accord and satisfaction, (3) waiver, (4) estoppel and (5) willful misconduct, are precluded as a matter of law. The defendant's affirmative defenses of breach of the terms and conditions of the tariff and failure to comply substantially with the terms and conditions of the tariff are not barred as a matter of law because all of the tariff's terms govern the parties' rights and liabilities. However, the Court finds insufficient evidence on the record to raise a material issue of fact as to MCI's breach of the terms of the tariff. Accordingly, the plaintiff's motion for summary judgment is hereby GRANTED.

## C. DEFENDANT'S MOTION TO DENY PLAINTIFF'S SUMMARY JUDGMENT FOR FAILURE TO COOPERATE IN DISCOVERY

As discussed briefly above, BEST has also moved to deny the plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56(f)[3] on the grounds that the plaintiff has stonewalled discovery. The Court notes that in his April 13, 1994 Order on Pending Discovery Motions, Magistrate Judge Stephen T. Brown denied all of the Defendant's motions to compel[4] interrogatory answers. As to the defendant's motion to Compel Depositions in the Forum, Magistrate Judge Brown held that "a review of all the pertinent matters suggests that this is an economic motion filed by the defendant seeking to avoid the expense of travel to Atlanta." (Maj. Ord., at p. 2). Thus, the Court finds there is no evidence that the plaintiff has obstructed the discovery process. Accordingly, the defendant's Motion to Deny Plaintiff's Motion for Summary Judgment is hereby DENIED.

## D. DEFENDANT'S MOTION TO AMEND ITS ANSWER TO ASSERT A COUNTERCLAIM

■ Under Rule 15(a), leave to amend a pleading should be "freely given." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Borden, Inc. v. Florida E.C.R. Co.,* 772 F.2d 750, 757 (11th Cir.1985). Where an amendment is sought to assert an omitted counterclaim under Rule 13(f), "the same liberal standards under Rule 15(a) are also applicable." *Kreuzfeld, A.G. v. Carnehammar,* 138 F.R.D. 594, 609 (S.D.Fla. 1991).

The Eleventh Circuit has held that grounds for denial of a motion to amend include "undue delay, undue prejudice to the defendants, and futility of the amendment." *Abramson v. Gonzalez,* 949 F.2d 1567, 1581 (11th Cir.1992) (citations omitted).

■ As discussed supra, a customer does not have a claim for relief against a

---

3. Rule 56(f) states: When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order is just.

4. Defendant's Motion to Compel with regard to document requests # 3, # 10 and # 12 were denied without prejudice for the defendant to seek this information if its Motion to File a Counterclaim is granted.

carrier even if the carrier has made fraudulent misrepresentations as to applicable tariff rates. *See Marco Supply,* 875 F.2d at 436. A district court is justified in denying a motion to amend if the proposed amendment is futile and could not survive a motion to dismiss. *See Foman,* 371 U.S. at 182–83, 83 S.Ct. at 230; *Abramson,* 949 F.2d at 1581; *Doe v. Board of County Comrs.,* 783 F.Supp. 1379, 1381, 1385–86 (S.D.Fla.1992) (denying motion for leave to amend Title VII claims as futile and prejudicial to the defendant).

The Court notes that the District Court of Rhode Island in *TCI Mail* denied a motion to dismiss a counterclaim alleging willful misconduct by a carrier because the tariff specifically authorized such a cause of action. That holding was in direct conflict with the Fourth Circuit's holding in *Marco Supply,* which dismissed a willful misrepresentation count in spite of a tariff provision permitting such a claim. BEST has not asserted that its proposed counterclaim is specifically authorized by the Tariff. However, even if that were the case, it would not change this Court's view that no such cause of action is permitted pursuant to the filed tariff doctrine based upon the Fourth Circuit's decision in *Marco Supply.*

Accordingly, the Defendant's Motion to Amend its Answer to Assert a Counterclaim is hereby DENIED.

## E. AMOUNTS DUE AND OWING UNDER THE TARIFF

The plaintiff asserts that the defendant owes $709,485.09 in unpaid invoices, pursuant to the Tariff. The defendant contends that MCI only produced a single remittance statement to BEST dated September 1993 demonstrating a debt of approximately $37,000. (Def.Rule 56(f) Mot. at p. 5). The Court finds that a material issue of fact exists as to the exact amount BEST owes MCI. Accordingly, the Plaintiff's motion for summary judgment is hereby GRANTED as to liability but DENIED as to damages. The action will proceed to trial as scheduled on the sole issue of damages.

THE COURT has considered the motions, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED as follows:

(1) Plaintiff's Motion for Summary Judgment is GRANTED in part as to liability but DENIED as to damages.

(2) Defendant's Motion to Deny Plaintiff's Motion for Summary Judgment Pursuant to Rule 56(f) is hereby DENIED.

(3) Defendant's Motion to Amend its Answer to Assert a Counterclaim is hereby DENIED.

DONE AND ORDERED.