**KANUCO TECHNOLOGY CORPORATION,**
Appellant,

v.

**WORLDCOM NETWORK SERVICES, INC., f/k/a Wiltel, Inc., Appellee.**

No. 14–97–00484–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 10, 1998.

Ken Okorie, Houston, Texas, for appellant.

Craig Joseph Ledet, Houston, Texas, for appellee.

Before Chief Justice MURPHY and Justices HUDSON and O'NEILL.

## OPINION

ONEILL, Justice.

In this appeal we must decide whether the filed tariff doctrine[1] precludes the defenses

---

**1.** The "filed tariff doctrine" is also known as the "filed rate doctrine." *See Marcus v. AT & T Corp.,* 938 F.Supp. 1158, 1169 (S.D.N.Y.1996), *aff'd,* 138 F.3d 46 (2nd Cir.1998); *MCI Telecomms. Corp. v. Best Tel. Co., Inc.,* 898 F.Supp. 868, 872 (S.D.Fla.1994).

and counterclaim asserted by appellant in a suit to recover amounts due under a contract for telecommunications services. Kanuco Technology Corporation ("Kanuco") appeals from a summary judgment granted in favor of WorldCom Network Services, Inc. ("WorldCom"), formerly known as WilTel, Inc. ("WilTel"), in its suit on a sworn account. In six points of error, Kanuco claims (1) genuine issues of material fact exist as to the terms of the agreement between the parties, (2) the trial court misapplied the filed tariff doctrine, (3) the trial court erred in denying its motion for summary judgment, and (4) WilTel is liable for willful misconduct and misrepresentation as a matter of law. We affirm.

### Background

Effective December 28, 1989, WorldCom's predecessor in interest, Vyvx Telecom, Inc. ("Vyvx"), filed a tariff (the "Vyvx Tariff") with the Federal Communications Commission ("FCC") pursuant to the Federal Communications Act of 1934, 47 U.S.C. § 203.[2] Thereafter, Vyvx entered into a contract for telecommunications services with Kanuco. Although not specified in the Vyvx Tariff, Vyvx and Kanuco orally agreed to a special arrangement whereby Vyvx would not charge Kanuco for attempted overseas calls lasting two minutes or less ("the Special Arrangement"). Vyvx made adjustments in Kanuco's bills by giving credit for calls falling under the Special Arrangement.

On December 31, 1991, WilTel acquired Vyvx and filed its own tariff with the FCC (the "WilTel Tariff"). This tariff became effective on January 14, 1992, and superseded the Vyvx Tariff. The WilTel Tariff makes no mention of the alleged Special Arrangement with Kanuco regarding attempted overseas calls. According to Kanuco, WilTel continued to make the agreed adjustments until May, 1994, when WilTel suddenly began billing Kanuco for all overseas calls. Kanuco disputed WilTel's charges and requested a credit pursuant to the Special Arrangement.

WilTel refused and, because Kanuco failed to pay the disputed bills, terminated service on May 11, 1994. WilTel then filed suit to recover the monies owed. WilTel subsequently changed its name to WorldCom.

In response to WorldCom's claims, Kanuco asserted various affirmative defenses and a counterclaim under the Texas Deceptive Trade Practices Act (the "DTPA") based upon WorldCom's alleged willful misconduct and misrepresentations. *See* TEX.BUS. & COM. CODE ANN. ch. 17 (Vernon 1987 & Supp.1998). Kanuco alleged that it relied on the Special Arrangement with Vyvx in entering into the contract for telecommunications services, and claimed that WilTel agreed to honor that agreement. WorldCom denied the existence of any such oral agreement and asserted that, in any event, such an agreement is unenforceable under the filed tariff doctrine. The trial court granted summary judgment in favor of WorldCom, and this appeal followed.

### Discussion

■■■ The Federal Communications Act of 1934 requires carriers to file with the FCC a listing of terms and conditions under which they will provide services to their customers. 47 U.S.C. § 203(a), (b); *see Fax Telecomunicaciones v. AT & T*, 952 F.Supp. 946, 951 (E.D.N.Y.1996), *aff'd*, 138 F.3d 479 (2nd Cir.1998); *MCI Telecomms. Corp. v. Best Tel. Co., Inc.*, 898 F.Supp. 868 (S.D.Fla.1994). This listing, called a "tariff," is a public document which must set out the carrier's charges as well as the classifications, practices and regulations affecting such charges. *See* 47 U.S.C. § 203(a). Filed tariffs govern a telecommunications service carrier's relationship with its customers, and such tariffs have the force and effect of law until suspended or set aside. *See Southwestern Bell Tel. Co. v. Metro–Link Telecom, Inc.*, 919 S.W.2d 687, 692 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (citing *Keogh v. Chicago & Northwestern Ry.*, 260 U.S. 156, 162–63, 43 S.Ct. 47, 67 L.Ed. 183 (1922)).[3]

---

**2.** As a common carrier, Vyvx must file tariffs with the FCC containing all of its charges for interstate services and all "classifications, prac-

tices and regulations affecting such charges." 47 U.S.C. § 203(a).

**3.** *See generally* Keith A. Rowley, Note, "Immunity from Regulatory Price Squeeze Claims: From

Once filed with the FCC, the tariff exclusively controls the rights and liabilities of the parties as a matter of law, and supersedes all other agreements between parties. *See Fax Telecommunicaciones,* 952 F.Supp. at 951; *Best Tel. Co., Inc.,* 898 F.Supp. at 872; *see also* 47 U.S.C. § 203(c). The tariff is not a mere contract; it is the law. *See Carter v. AT & T Co.,* 365 F.2d 486, 496 (5th Cir.1966). Thus, the doctrine "conclusively presumes" that both the carrier and its customers know the contents and effect of published tariffs. *Metro–Link Telecom, Inc.,* 919 S.W.2d at 693; *see Marcus v. AT & T Corp.,* 938 F.Supp. 1158, 1169 (S.D.N.Y.1996), *aff'd,* 138 F.3d 46 (2nd Cir.1998). Essentially, the filed tariff doctrine prevents an aggrieved customer from enforcing contract rights that contradict governing tariff provisions or from asserting estoppel against the carrier. *See Fax Telecommunicaciones,* 952 F.Supp. at 951.

■ The filed tariff doctrine has a two-fold purpose. First, the United States Supreme Court has long held that the reasonableness of rates in a regulated industry is a question solely for the governing regulatory body. *See id.* Second, the doctrine prevents carriers from discriminating in the prices they charge for the same service among different ratepayers. *See id.* Because non-justiciability and anti-discrimination are the core purposes of the doctrine, application of the filed tariff doctrine often has seemingly harsh and unfair results. *See id.; Cooperative Communications Inc. v. AT & T Corp.,* 867 F.Supp. 1511, 1518 (D.Utah 1994); *see also Maislin Indust. U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 126–27, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). For example, a carrier must charge the filed tariff rate even if it has quoted a lower rate to its customer upon which the customer relied in entering into the contract. *See Marco Supply Co. v. AT & T,* 875 F.2d 434, 436 (4th Cir.1989); *see also Transportation Data Interchange v. AT*

*& T Corp.,* 920 F.Supp. 86, 88 (D.Md.1996). Thus, "[n]either the customer's ignorance nor the utility's misquotation of the applicable tariff provides refuge from the tariff or alters the tariff's terms." *See Metro–Link Telecom, Inc.,* 919 S.W.2d at 693. As stated in *Marco Supply Co.,* "while [the customer] may have equity on its side, the law is against it." 875 F.2d at 436. The question of whether the filed tariff doctrine shields a carrier from liability is a question of law and is subject to *de novo* review. *See Metro–Link Telecom, Inc.,* 919 S.W.2d at 693.

Kanuco's first five points of error concern the applicability of the filed tariff doctrine and WorldCom's liability for misrepresenting material facts under the DTPA. In addressing these points, we must determine (1) whether the filed tariff doctrine applies in this case, (2) whether the WilTel Tariff contemplates the Special Arrangement regarding overseas calls,[4] and (3) whether Kanuco's DTPA claim is barred by the filed tariff doctrine.

■ Kanuco claims the filed tariff doctrine does not apply to the facts and circumstances of this case. Specifically, Kanuco contends the filed tariff doctrine applies only when a controversy concerns rates charged and services rendered. According to Kanuco, it is not disputing the rates charged or the services rendered by WorldCom. Rather, Kanuco is disputing WorldCom's billing for uncompleted overseas calls which, according to the Special Arrangement, were presumed to be all calls lasting two minutes or less. Because such calls were presumed to be disconnected or uncompleted, Kanuco reasons, WorldCom's billings were for services it did not render and therefore they are not controlled by the filed tariff doctrine. We disagree.

■ As previously stated, anti-discrimination is one of the primary purposes of the filed tariff doctrine. *See Fax Telecommuni-*

---

Koegh, Parker, and Noerr to Town of Concorde and Beyond," 70 Tex.L.Rev 399, 413–15 (1991) ("The Origins and Evolution of the Filed Rate Doctrine").

4. Although Kanuco claims genuine issues of material fact exist as to the terms of the agreement

between the parties, for summary judgment purposes we presume that the terms of the agreement are as described by Kanuco and resolve all doubts concerning those terms in its favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

*caciones,* 952 F.Supp. at 951. Thus, contrary to Kanuco's argument, the doctrine does not limit itself to the mere prohibition of discriminatory rates charged by carriers. *See AT & T v. Central Office Tel., Inc.,* — U.S. —, —, 118 S.Ct. 1956, 1963, 141 L.Ed.2d 222 (1998). The doctrine's purpose is to prevent carriers from creating discriminatory privileges. *See id.* Such discriminatory privileges may appear in many guises, and are not limited to discounted rates. *See id.* As stated by the United States Supreme Court:

> "[i]f 'discrimination in charges' does not include non-price features, then the carrier could defeat the broad purpose of the [Federal Communications Act] by ... providing an additional benefit at no additional charge.... An unreasonable 'discrimination in charges,' that is, can come in the form of a lower price for an equivalent service or in the form of an enhanced service for an equivalent price."

*Id.* (citation omitted). Thus, "even provisioning [of services] and billing are, in the relevant sense, 'covered' by the tariff." *Id.* 118 S.Ct. at 1964. In the present case, WorldCom allegedly agreed to credit Kanuco for all overseas calls lasting two minutes or less, even though such an arrangement was not a part of its filed tariff and had the overall effect of reducing Kanuco's rates. Because the dispute arises over charges billed by WorldCom which ultimately effected Kanuco's rates, the filed tariff doctrine applies. *See id.*

Kanuco claims that, even if the filed tariff doctrine applies, the WilTel Tariff contemplates the Special Arrangement between the parties. Again, we disagree. Recognizing increased competition in the marketplace for telephone services, the FCC allows carriers to individually negotiate customer contracts to meet the customer's unique needs. *See Fax Telecommunicaciones,* 952 F.Supp. at 953. However, in order to avoid what may constitute a discriminatory privilege, the FCC requires that the "contract tariffs" are made available to other similarly situated customers. *See id.* Thus, to be enforceable, such contract tariffs must be filed with the FCC. *See id.*

In the present case, Vyvx filed a tariff with the FCC on December 14, 1989. On December 31, 1991, Vyvx was acquired by WilTel. On January 14, 1992, WilTel filed a tariff adopting, ratifying, and making amendments to the Vyvx Tariff. The WilTel Tariff superseded the Vyvx Tariff. *See id.* at 952 (holding "[t]ariff amendments ... supersede a carrier's prior contractual arrangement with customers."). Thus, regardless of any arrangements Vyvx may have had with Kanuco, once WilTel filed its own tariff, the contractual arrangement between Kanuco and WilTel was governed by the WilTel Tariff. *See id.*

The WilTel Tariff does not contemplate the Special Arrangement regarding overseas calls alleged by Kanuco. Section II. 14 of the WilTel Tariff, entitled "Special Customer Arrangements," allows WorldCom in certain situations to provide special or unique services requested by a customer that are not offered under the tariff. However, the Wiltell Tariff provides for situations where calls are interrupted or disconnected. Specifically, Section II. 10, entitled "Allowances for Interruptions," lists those situations, including interrupted and disconnected calls, for which a customer is given credit allowances. This section does not include the terms of the Special Arrangement whereby all overseas calls lasting two minutes or less are credited to the customer's account. In fact, nowhere in the WilTel Tariff does there appear a provision concerning credit allowances in those situations covered by the alleged Special Arrangement. Further, the record contains no document resembling a contract tariff filed with the FCC which provides for the terms allowed by the Special Arrangement. Because the terms of the Special Arrangement are not an option available to others in Kanuco's situation, it is a discriminatory privilege prohibited by the filed tariff doctrine. As a result, Kanuco's state law claims arising out of the Special Arrangement are barred. *See Central Office Tel., Inc.,* 118 S.Ct. at 1963–64 (citing *Chicago & Alton R. Co. v. Kirby,* 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033 (1912); *Davis v. Cornwell,* 264 U.S. 560, 44 S.Ct. 410, 68 L.Ed. 848 (1924)).

Finally, Kanuco contends World-Com's liability for willful misconduct and for misrepresentations prohibited by the DTPA is not limited by the tariff and therefore its state law claims are actionable.[5] However, Kanuco's tort claims are based upon or arise out of WilTel's alleged failure to disclose the terms of its filed tariff. As previously stated, a customer is "conclusively presumed" to know the contents and the effect of the tariff, and neither the customer's ignorance nor the carrier's misquotation of the applicable tariff alters the tariff's terms. *Metro–Link Tele-com, Inc.,* 919 S.W.2d at 693. Allowing Kanuco's claim of willful misconduct to proceed would require the court to enforce a discriminatory rate, and "[a customer] can no more obtain unlawful preferences under the cloak of a tort claim than it can by contract." *Central Office Tel., Inc.,* 118 S.Ct. at 1965. As stated by the United States Supreme Court, "[t]he tariff can no more exempt the broken promise of preference that is willful than it can the broken promise of preference that is unintentional." *Id.; see also Metro–Link Telecom, Inc.,* 919 S.W.2d at 693 (holding the filed rate doctrine applies to bar state as well as federal causes of action); *Fax Telecommunicaciones,* 952 F.Supp. at 951 (holding the filed tariff doctrine precludes an aggrieved customer from asserting estoppel against the carrier). Because Kanuco's state law claims arise out of discriminatory privileges barred by the filed tariff doctrine, such claims are barred and the trial court did not err in granting summary judgment thereon.

Points of error one through five are overruled.

In its sixth and final point of error,[6] Kanuco contests the trial court's failure to award attorney's fees in its favor. In Texas, attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract between the parties. *See Travelers Indem. Co. of Conn. v. Mayfield,* 923 S.W.2d 590, 593 (Tex.1996). In the present case, the only statute that would authorize the recovery of attorney's fees is the DTPA. TEX.BUS. & COM. CODE ANN. § 17.50(d) (Vernon Supp.1998). Because we have determined that Kanuco's DTPA claim is barred by the filed tariff doctrine, it is not entitled to recover attorney's fees. *See Travelers Indem. Co. of Conn.,* 923 S.W.2d at 593. Moreover, there is no contract between the parties authorizing an award of Kanuco's attorney's fees. *See id.* Consequently, point of error six is overruled.

The judgment of the trial court is affirmed.

5. Citing *MCI Telecommunications Corp. v. TCI Mail, Inc.,* 772 F.Supp. 64, 67–68 (D.R.I.1991), Kanuco contends the filed tariff doctrine does not preclude its recovery for WorldCom's misrepresentations regarding the rate governed by the filed tariff, and upon which Kanuco relied. In *TCI Mail, Inc.,* the district court held that the "MCI Tariff itself does not clearly preclude a contract or tort claim against MCI based on its alleged misconduct." *Id.* at 68. Recently, however, the United States Supreme Court has held otherwise. *See Central Office Tel., Inc.,* 118 S.Ct. at 1965 (holding that state law claims arising out of discriminatory privileges are barred by the filed tariff doctrine).

6. On the day before submission, Kanuco filed a motion requesting leave to file a supplemental brief raising an additional point of error. A party may seek to bring new matters before the court in a supplemental or amended brief "as justice requires and upon such reasonable terms as the court may prescribe." TEX.R.APP P. 38.7. Finding no basis to justify the late filing of Kanuco's additional point of error, we denied his motion. Consequently, we do not address Kanuco's purported seventh point of error.