QWEST CORPORATION, a Colorado
corporation, Plaintiff,

v.

AT & T CORP., a New York corpora-
tion, and AT & T Communications,
Inc., a Delaware corporation, Defen-
dants.

No. CIV.A. 03–F–2084 (CB).

United States District Court,
D. Colorado.

May 20, 2005.

Douglas P. Lobel, David A. Vogel, Ar-
nold & Porter, McLean, VA, James E.
Scarboro, Timothy R. Macdonald, Arnold
& Porter, LLP, Denver, CO, for Plaintiff.

Scott S. Barker, Jonathan S. Bender,
Joanna R. Vilas, Holland & Hart LLP,
Denver, CO, Rick D. Bailey, Holland &
Hart, LLP, Greenwood Village, CO, David
W. Carpenter, Thomas F. Ryan, Sidley
Austin Brown & Wood, LLP, Chicago, IL,
Michael J. Hunseder, Sidley Austin Brown
& Wood, LLP, Washington, DC, for De-
fendants.

## ORDER ON QWEST'S MOTIONS *IN LIMINE* NOS. 3 AND 5

FIGA, District Judge.

Upon review of the case file, including
Qwest's Notice of Supplemental Authority
on Issue Raised at Pretrial Conference
and Defendants' Response to Qwest's No-
tice of Supplemental Authority on Issue
Raised at Pretrial Conference, the Court
issues the following rulings:

Plaintiff Qwest Corporation's Motion *in
Limine* No. 5: to Exclude Evidence That
Qwest Released or Waived its Tariff
Claims (Dkt.# 194), filed May 2, 2005,
seeks exclusion of arguments and evidence
that Qwest "released" or "waived" its tariff
claims. In the motion, Qwest essentially
argues certain legal issues touched upon
in its motions for summary judgment.
Specifically, Qwest contends that control-
ling Supreme Court and Tenth Circuit
precedent provides an absolute bar against
a carrier such as Qwest releasing or waiv-
ing a tariff claim, and therefore any evi-
dence of such is irrelevant and prejudicial.

Section 203 of the Federal Communi-
cations Act of 1934, 47 U.S.C. § 203, re-
quires all common carriers of interstate
and foreign telecommunications to file a
schedule of their charges, as well as the
classifications, practices and regulations

affecting such charges, with the Federal Communications Commission ("FCC"). This schedule is known as a tariff. *Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1435 (3d Cir.1991), *cert. denied,* 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 921 (1992). A carrier can charge only the rates listed in the tariff, no more and no less. 47 U.S.C. § 203(c)(1). The charges, classifications, regulations or practices in the tariff may be changed only after notice is given to the FCC and the public in a form required by regulation. 47 U.S.C. § 203(b)(1).

The "filed tariff doctrine" (sometimes known as the "filed rate doctrine") developed from the Interstate Commerce Act, and courts have ruled that it is fully applicable to these provisions of the Communications Act. The classic statement of the filed rate doctrine comes from *Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915).

Under the interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge, Deviation from it is not permitted upon any pretext.... ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

Following this mandate, courts strictly interpret the filed tariff doctrine. "[F]ederal tariffs are the law, not mere contracts." *MCI Telecommunications Corp. v. Garden State Inv. Corp.,* 981 F.2d 385, 387 (8th Cir.1992). Thus, valid tariffs "conclusively and exclusively control the rights and liabilities between" a carrier and its customer. *MCI Telecommunications Corp. v. Graphnet, Inc.,* 881 F.Supp. 126, 132 (D.N.J.1995). Because the filed tariff doctrine presumes that customers know what the applicable tariff is, it prevents an aggrieved customer from enforcing claimed contract rights that contravene governing tariff provisions or from asserting estoppel against the carrier. *Marco Supply Co. v. AT & T Communications, Inc.,* 875 F.2d 434, 436 (4th Cir.1989). The law makes clear that the filed tariff doctrine does not exist in isolation from the regulatory scheme it was intended to further.

The Tenth Circuit discusses these principles in only a few cases, none of which are recent but all of which are still good law. *See Teleco, Inc. v. Southwestern Bell Tel. Co.,* 511 F.2d 949, 952–53 (10th Cir.), *cert denied,* 423 U.S. 875, 96 S.Ct. 145, 46 L.Ed.2d 106 (1975) (tariffs required to be filed with a regulatory body are more than merely the terms of contract between the regulated utility and its customers; they are the law (applying Oklahoma law)); *Atchison, T. & S.F. Ry. Co. v. Bouziden,* 307 F.2d 230, 234 (10th Cir.1962) (a tariff binds both carriers and shippers with the force of law); *Empire Petroleum Co. v. Sinclair Pipeline Co.,* 282 F.2d 913, 916 (10th Cir. 1960) (no act or omission of the carrier precludes it from enforcing payment of the full amount under the tariff by a person liable therefor). These cases stand for the proposition that the filed tariff doctrine prevents parties from contractually modifying tariffs. This prohibition includes not only modification of tariffs' rates and terms, but also modification of a party's potential liability under tariffs, such as in the form of a release or waiver.

In addition to these Tenth Circuit cases, several courts in other jurisdictions specifically address whether parties can release or waive liability for charges pursuant to filed tariffs. Following the prescription that the filed tariff doctrine be strictly construed, these courts hold that parties

may not release or waive any claims arising under tariffs controlled by the doctrine. *MCI Telecommunications Corp. v. The Best Telephone Co., Inc.*, 898 F.Supp. 868 (S.D.Fla.1994) is in many respects factually analogous to the instant case. In *Best Telephone*, the plaintiff sued "to recover unpaid charges for telecommunications services provided by MCI under the terms and conditions of MCI Tariff FCC No. 1 ...." *Id.* at 869. The defendant asserted the affirmative defenses of unclean hands, accord and satisfaction, waiver and estoppel and breach of the tariff. The court granted summary judgment to the plaintiff and found that the filed tariff doctrine barred the defendant's affirmative defenses. *Id.* at 874–75.

Similarly, in *Illinois Cent. Gulf R. Co. v. Golden Triangle Wholesale Gas Co.*, 586 F.2d 588 (5th Cir.1978), the Fifth Circuit held that a railroad was required to collect certain storage charges under its tariff even though it had entered into an agreement with a shipper that the tariff would not apply. In reaching its decision, the court explained that equitable considerations could not justify a carrier's failure to collect authorized tariff charges, nor could they be invoked as the basis for estoppel to collect such charges. *Id.* at 592. *See also International Telecomms. Exch. Corp. v. MCI Telecomms. Corp.*, 892 F.Supp. 1520, 1540–41 (N.D.Ga.1995) (filed tariff doctrine precludes defenses available to defendant in standard contract dispute); *American Transp. Lines, Inc. v. Wrves*, 985 F.2d 1065, 1066–67 (11th Cir.1993) (once the tariff is approved, "the tariff binds the carrier and the shipper with the force of law," and "the rate must be charged and paid regardless of mistake, inadvertence or contrary intention of the parties."); *Missouri P.R. Co. v. Rutledge Oil Co.*, 669 F.2d 557, 558 (8th Cir.1982) (estoppel is not a defense under a tariff claim); *Consolidated Rail Corp. v. Standard Milling Co.*, 508 F.Supp. 277, 279 (W.D.N.Y.1981) ("[i]t is generally held that a carrier may not settle a claim for charges due under a tariff."); *Consolidated Freightways Corp. of Del. v. Terry Tuck, Inc.*, 612 F.2d 465, 466 (9th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980) (counterclaim for fraud dismissed). AT & T does not offer persuasive contrary authority. The Court does not read Section 201(b) of the Communications Act. 47 U.S.C. § 201(b), as AT & T construes it.

■ Based upon the courts' strict interpretation of the filed tariff doctrine, it appears that the parties here simply could not, as a matter of law, release or waive AT & T's obligations under Qwest's tariff, nor alter any applicable statute of limitations. While the parties were certainly free to contract away any procedural issues or technical disputes regarding their billing procedures, they could not alter the substantive basis and terms of the actual sums to be charged and collected under the tariffs. The filed tariff doctrine requires that AT & T pay the tariff rate in spite any contractual agreement to the contrary. To require otherwise would contravene the clear mandate of the filed tariff doctrine and years of case law interpreting it.

For these reasons, Qwest's Motion *in Limine* No. 5 is GRANTED. Evidence or argument that Qwest allegedly released or waived its tariff claims against AT & T is hereby excluded from trial as irrelevant under F.R.E. 401. Evidence or argument relating to Qwest's purported release or waiver of its state law contract claims not otherwise covered by a tariff may be admissible, but must be limited to that specific context.

Similarly, Qwest's Motion *in Limine* No. 3: Evidence and Argument That Qwest's Tariff Prohibits Collection of Undercharges (Dkt.# 192), filed May 2, 2005, is also

GRANTED. In the motion, Qwest seeks to bar AT & T from arguing that one part of the tariff prohibits Qwest from enforcing it and collecting undercharges for previous billing periods. It suggests that such an interpretation of the tariff is unreasonable, and even so, that the Court, and not a jury, should interpret the plain language of the tariff.

The Court hereby finds that the language of Qwest's tariff does not foreclose what has become known in this litigation as "backbilling." This is especially true under the circumstances averred in the complaint, where the backbilling allegedly occurred as a result of AT & T's concealment of flaws with the NSS Database, and resulted in Qwest's inability to bill appropriately under the tariff. But even if such claimed facts are not established, the tariff does not preclude the reopening of substantive billing issues, particularly of this type and magnitude. AT & T is thus prohibited from introducing evidence or argument that one part of the tariff prohibits Qwest from enforcing it and collecting undercharges for previous billing periods. To the extent that any argument against "backbilling" is premised on a statute of limitations defense, it will be addressed at trial.

Partial summary judgment is entered in favor of Qwest accordingly.